**BEGHIN-SAY INTERNATIONAL INC., Appellant,**

v.

**OLE–BENDT RASMUSSEN, Appellee.**

**Appeal No. 84–579.**

United States Court of Appeals, Federal Circuit.

May 9, 1984.

---

Theodore A. Breiner, Alexandria, Va., argued, for appellant. With him on the brief was A.W. Breiner, Alexander, Va.

William J. Daniel, Arlington, Va., argued, for appellee.

Before MARKEY, Chief Judge, and FRIEDMAN and RICH, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Eastern District of Virginia (district court) dismissing this action for lack of subject matter jurisdiction because it does not arise under any Act of Congress relating to patents within the meaning of 28 U.S.C. § 1338(a) and because no other basis for federal jurisdiction exists. We *dismiss*.

### Background

Beghin-Say, S.A. (Beghin-Say), plaintiff before the district court, is a French corpo-

ration engaged in research and development, manufacturing, and marketing of paper products. It markets its products throughout the world, including the United States, and has assigned its interest in certain United States patent applications to its United States subsidiary, Beghin-Say International Inc. (BSI). Beghin-Say's motion under Rule 43(b), Fed.R.App.P., to substitute BSI was granted on November 8, 1983, making BSI the appellant herein.

Ole-Bendt Rasmussen (Rasmussen), a Danish citizen residing in Switzerland, performs research for various companies. He is paid by each company for his research services and for his assignment of inventions resulting from his research to that company.

In a November 1971 written contract, Rasmussen allegedly assigned to Beghin-Say patent rights to a net-like reinforcement of paper products, and agreed to develop in conjunction with Beghin-Say an improved reinforced net structure known as "reinforced scrim fiber". On August 11, 1972, Beghin-Say and Rasmussen, having developed a reinforced product and method of making it, filed British Patent Application Serial No. 37,499 thereon.

In a January 1973 contract, Rasmussen allegedly "assigned" in writing to Beghin-Say "all United States patent rights including United States patent applications" in the product developed under the November 1971 agreement. Beghin-Say allegedly "complied fully" with the statute, 35 U.S.C. § 261,[1] making patent applications assignable, and a regulation, 37 CFR § 1.331, governing the recording of assignments.

Beghin-Say and Rasmussen each filed a United States patent application based on the British application. Beghin-Say's United States Application Serial No. 821,079 and Rasmussen's United States Application Serial No. 794,527 are presently pending in

---

1. 35 U.S.C. § 261, provides in relevant part:

 "§ 261 Ownership; assignment

 "Subject to the provisions of this title, patents shall have the attributes of personal property.

 "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States."

the Patent and Trademark Office (PTO). The filing dates to which the U.S. applications are entitled (August 13, 1973 and August 7, 1974, respectively) are *after* the contracts on which the present action is based.

Rasmussen alleged that the November 1971 contract was restricted to European rights and that the contracts could not have included assignments of applications that did not exist.

Beghin-Say filed this action on June 6, 1983, requesting the district court to remove the cloud on Beghin-Say's title to the two U.S. applications and to declare them the property of Beghin-Say. Rasmussen moved to dismiss, and Beghin-Say responded with an amended complaint.

The amended complaint requested that the district court declare that the "assignment" of the two U.S. applications is "valid" under 35 U.S.C. § 261, and that it vests in Beghin-Say all right to the invention(s) set forth in those applications.

On August 31, 1983, Rasmussen moved to dismiss the amended complaint under Rules 12(b)(1)–(6), Fed.R.Civ.P.

The district court dismissed the amended complaint for lack of subject matter jurisdiction, noting the absence of any claim for patent infringement, holding that the action did not arise under any Act of Congress relating to patents within the meaning of 28 U.S.C. § 1338(a), citing *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 144 USPQ 46 (2nd Cir.1964), and finding no other basis for federal jurisdiction.

BSI says the complaint set forth a cause of action arising under the laws of the United States and an Act of Congress relating to patents, 28 U.S.C. §§ 1331 and 1338(a),[2] citing *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923).

BSI also asserts on appeal that its substitution makes the case now one between Rasmussen and BSI, a Delaware corporation with its principal place of business in New Jersey, so that there is now diversity of citizenship under 28 U.S.C. § 1332(a)(2).[3]

### Issue

Whether the district court erred in dismissing the complaint for lack of jurisdiction under § 1338(a).

### OPINION

#### (1) *28 USC § 1338(a)*

■ For jurisdiction of the district court over this action to have been founded on § 1338(a), plaintiff must have asserted some right or interest under the patent laws, or at least some right or privilege that would be defeated by one or sustained by an opposite construction of those laws. *Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902). That was not done here.

The action sounds exclusively in contract. BSI predicates its claim entirely on its interpretation of the contracts' provisions. Absent those contracts, BSI would have no claim whatever to ownership in the patent applications in dispute or otherwise. Absent those contracts, BSI would lack standing to sue in any court in relation to those applications.

No question under the patent laws (e.g., patent validity, patent infringement, fraud upon the PTO, patent-antitrust) is present

---

**2.** § 1331 reads:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 § 1338(a) reads:
 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

**3.** On October 19, 1983, BSI commenced the same action against Rasmussen in the District Court for the District of Delaware seeking a declaration that BSI is the owner of the U.S. applications and that the "assignment" from Rasmussen is "valid" under 35 U.S.C. § 261, alleging jurisdiction under 28 U.S.C. § 1332 ("diversity"); 28 U.S.C. §§ 1331 and 1338(a), and 35 U.S.C. § 261 ("federal question"); and 28 U.S.C. § 1356 ("*in rem* jurisdiction"). Rasmussen has moved to dismiss the complaint in Delaware.

in or arises out of the allegations in the complaint.

Though BSI alleges jurisdiction under § 1338(a), nothing in that statute confers federal jurisdiction over mere private contract disputes, such as that presented here. That the involved contracts may or may not constitute agreements to assign future patent applications does not convert a contract dispute cognizable in state courts to a federal question appropriate for determination in a federal court. *Wilson v. Sandford,* 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850) and its progeny (*Ausherman v. Stump,* 209 USPQ 984 (10th Cir.1981); *Combs v. Plough, Inc.,* 681 F.2d 469, 216 USPQ 463 (6th Cir.1982)), have consistently held for over 130 years that contract disputes involving patents do not arise "under any Act of Congress relating to patents," as required by 28 U.S.C. § 1338(a).

BSI's primary citation, *Crown Die & Tool Co. v. Nye Tool & Machine Works,* *supra,* is totally inapposite. That case was a suit on an existing patent brought by an assignee of only the right to sue for damages for past infringement. The Court held that the assignee had no right to bring suit. The right to sue was at that time provided for in R.S. § 4919, which read in pertinent part:

> "Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee, or grantee."

Unlike this suit, *Crown Die* was not an action involving interpretation of a contract between the parties, there being no dispute that the contract was an assignment of only the right to sue for past infringement; it was an action involving interpretation of a statute governing the right to sue. Unlike this suit, where no U.S. applications existed when the contracts were entered, and where the sole question is whether the contracts themselves constituted assignments, *Crown Die* involved the effect of a statute on an existing unchallenged assignment of a right to sue upon an existing patent. Though the Court referred in *Crown Die* to the validity of a patent assignment as a matter arising under the

patent laws, that reference cannot be read out of context. BSI is not here suing on a patent and is not claiming a right to sue based on an assignment of a right to sue from a patent owner. It is, on the contrary, requesting that the involved contracts be interpreted as creating or constituting an assignment. The present suit is therefore a contract suit, pure and simple, and is not a suit under an "Act of Congress relating to patents" as required by § 1338(a).

BSI relies heavily on the PTO's having recorded the involved contracts, saying that recordation evidences their validity as title conveyances. That argument was considered and found without merit in *Lang v. Patent Tile Co.,* 216 F.2d 254, 103 USPQ 287 (5th Cir.1954) (respecting R.S. § 4898, predecessor of § 261) and in *T.B. Harms Co. v. Eliscu, supra,* (respecting copyrights, treated identically with patents respecting jurisdiction of the district court under § 1338(a)). In all events, recordation does not bring a suit on the contract within § 1338(a), and no claim in the complaint arises under the patent statutes.

In addition to quoting inapplicable language from *Crown Die,* BSI relies inappropriately on two other court decisions, *Unarco Industries, v. Kelley Co.,* 175 USPQ 199 (7th Cir.1972) (whether a nonexclusive license involved in a settlement is assignable; jurisdiction not an issue), and *Pitney-Bowes, Inc. v. Mestre,* 517 F.Supp. 52, 211 USPQ 681 (S.D.Fla.1981), *aff'd in part,* 701 F.2d 1365, 218 USPQ 987, *cert. denied,* —— U.S. ——, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983) (whether alleged patent misuse was a type of antitrust violation; jurisdiction of the district court not an issue raised).

The sole question raised by the present complaint is whether the involved contracts should be interpreted as having conveyed title to two then non-existent U.S. patent applications. No Act of Congress relating to patents within the meaning of 28 U.S.C. § 1338(a) spells out criteria for determining what does or does not constitute a conveyance by contract. The district court com-

mitted no error, therefore, in dismissing the complaint for lack of jurisdiction.

### (2) *Other Bases*

BSI argues that 28 U.S.C. § 1331 and 35 U.S.C. § 261 provide bases for jurisdiction "independently" of 28 U.S.C. § 1338(a). The short answer is that if those other bases for the district court's jurisdiction exist in this case they are irrelevant in this court.

 Our jurisdiction to decide appeals from district courts is non-existent when the jurisdiction of the district was not based at all on either 28 U.S.C. § 1338(a) or 28 U.S.C. § 1346. Federal Courts Improvement Act of 1982, 28 U.S.C. § 1295(a)(2). Had Rasmussen moved for dismissal of this appeal for lack of jurisdiction in this court, that motion would have been granted, for we do have jurisdiction to determine whether the district court had jurisdiction under § 1338(a), and thus whether this court has jurisdiction to decide the appeal. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877, 219 USPQ 197, 200 (Fed.Cir.1983); *Montgomery Ward & Co. v. Zenith Radio Corp.*, 673 F.2d 1254, 1258 n. 7 (CCPA 1982). Thus, our determination that the order appealed from was proper, because the district court lacked jurisdiction under § 1338(a), requires dismissal of the appeal for lack of jurisdiction in this court.

Though we lack jurisdiction in this case because no jurisdiction in the district court was based on § 1338(a), we include the following short reference to BSI's assertions to provide guidance to others who may seek to bring appeals of this type to this court, and to illustrate the foundation for reference to BSI's arguments in section (4) of this opinion.

BSI notes the presence of "laws" in § 1331 and says the present action raises matters of federal concern and relationship. The fact is that the outcome of the present contract action, however it may be decided in a state court or under state law, is a matter of monumental disinterest to the federal government. Whether the contracts are interpreted in favor of BSI or Rasmussen is a matter of no federal concern or relationship whatsoever.

 Nothing in § 261 itself creates a right of action in the federal courts seeking an interpretation of contracts. BSI's repeated mislabling of this action as one for "declaration of the validity of an assignment" cannot make § 261 a basis for federal jurisdiction over this contract suit.

Assuming the truth of what it wishes were true but is not, BSI presents a number of totally irrelevant, question-begging, and conflicting considerations: treaties allow foreign nationals to obtain and assign U.S. patent rights; 35 U.S.C. § 102 refers to a "person" without specifying nationality; the Constitution does not specify nationality of "authors and inventors"; all U.S. citizens are affected by an "assignment" of an application; a state court cannot decide "a federal right created by federal statute"; Rasmussen and BSI's parent corporation are foreign entities; patents are grants of federal rights.

### (3) *Mootness*

BSI contends in its main brief that, because of the substitution, diversity jurisdiction now exists and this appeal has thereby been rendered "moot" or "probably moot". BSI did not, however, move to withdraw the appeal. Rasmussen agreed that the appeal is moot in view of diversity. BSI's reply brief says only that the appeal is not procedurally frivolous for mootness because Rasmussen has not "agreed" to a remand.

 Beghin-Say assigned whatever rights it may have in the two U.S. applications to BSI *after* the district court entered the order appealed from in this case and BSI moved for substitution *after* this appeal was filed. Those actions cannot establish diversity jurisdiction in the district court under § 1332(a)(2) when the complaint was filed. That determination must be made as of the filing date of a complaint, or of an amended complaint, and cannot be changed by action of a party thereafter. *Albert v. Kevex Corp.*, 729

F.2d 757 (Fed.Cir. March 6, 1984). It is in any event a matter for decision by the district court in the first instance.[4] The creation of diversity jurisdiction in BSI's Delaware suit, *supra*, note 3, if that occurred, could not work a retroactive creation of diversity jurisdiction in the Virginia court that issued the order here appealed from. Nor does substitution of BSI on appeal affect the sole issue before us, i.e., whether the Virginia district court erred in holding that it had no jurisdiction under § 1338(a) over the action as filed. Nor would we have jurisdiction over an appeal from a final decision of a district court in a case in which that court's jurisdiction was based solely on diversity of citizenship.

As above indicated, we do have jurisdiction to decide our own jurisdiction and that of the district court on which our own depends. The appealed order was based on lack of jurisdiction over this type of suit under § 1338(a). BSI questions the correctness of that order. Our decision disposes of that question and the appeal is not therefore moot.

### (4) *Costs*

■ Rasmussen requests costs, attorney fees, and damages under Rule 38, Fed.R. App.P., asserting that this appeal is frivolous on its merits and in its procedural foundation and that it was filed for the sole purpose of unnecessarily and needlessly prolonging the ongoing conflict between the parties.

This court has noted that the filing of and proceeding with a clearly frivolous appeal constitutes an unnecessary and unjustifiable burden on overcrowded courts, diminishes the opportunity for careful contemplative consideration of non-frivolous appeals, and delays access to the courts of persons having truly deserving causes. *Asberry v. United States Postal Service,*

692 F.2d 1378, 215 USPQ 921 (Fed.Cir. 1982); *Connell v. Sears Roebuck & Co.,* 722 F.2d 1542, 220 USPQ 193 (Fed.Cir. 1983). *Asberry* was called to counsel's attention when this appeal was filed.

There are, however, differences between excessive advocacy and inexperience on the one hand and clear frivolity on the other. True, it is difficult to conceive of any useful or non-frivolous purpose that could have reasonably motivated the continuation of this appeal, an appeal that does border the ragged edge of frivolity. First, BSI has a suit pending in Delaware, where it says diversity jurisdiction exists, and where a judgment on the merits may be obtained from which an appeal will lie to the United States Court of Appeals for the Third Circuit.[5] Second, the result of a reversal here, if there had been a remote chance of achieving it, would have been merely the pendency of BSI's two identical suits in two different federal district courts. Third, BSI continued to prosecute the appeal after the bankruptcy of its arguments had been pointed out in Rasmussen's brief.

Though a total absence of merit in BSI's arguments may, as Rasmussen suggests, be viewed as evidence of frivolousness, it may in this case also be viewed as the product of other factors, as indicated above. That consideration argues against Rasmussen's demand for all sanctions possible under Rule 38. Another sanction-limiting factor is an opportunity provided for guidance to the parties. BSI may now, for example, deem advisable the removal of § 1338(a) as a claimed basis for jurisdiction in the district court for Delaware, and may also recognize that the sole basis for jurisdiction over this contract suit in any federal district court is diversity of citizenship.

We decline therefore to grant Rasmussen's request for a total sanction, including

---

**4.** Our grant of BSI's motion for substitution on appeal did not constitute such substitution before the district court. If BSI persists in its apparent desire to conduct two identical suits in two busy federal courts, it may file a new complaint in the Virginia court, whereupon one of the duplicative actions will, presumably, be stayed or transferred.

**5.** If trial of this action in either district court proceeds to conclusion, the court will decide the case in accordance with the law of contracts, which may be that of the appropriate state, *see In Re Snap On Tools,* 720 F.2d 654, 220 USPQ 8 (Fed.Cir.1983), or, perhaps, that of France.

attorney fees and damages. We do order that BSI shall reimburse Rasmussen for his costs on this appeal.

### DECISION

Because no jurisdiction of the district court was here based on § 1338(a), the appeal must be dismissed for lack of jurisdiction in this court.

Costs to Rasmussen.

DISMISSED.

FRIEDMAN, Circuit Judge, concurs in the result.