Dominique DUBOST, Appellant,

v.

U.S. PATENT AND TRADEMARK OFFICE, Appellee.

Appeal No. 85–761.

United States Court of Appeals, Federal Circuit.

Nov. 22, 1985.

Marsha G. Gentner, Fleit, Jacobson, Cohn & Price, of Washington, D.C., argued for appellant. With her on brief was Martin Fleit, Washington, D.C.

Harris A. Pitlick, Associate Sol., U.S. Patent & Trademark Office, of Arlington, Va., argued for appellee. With him on brief were Joseph F. Nakamura, Sol. and John W. Dewhirst, Associate Sol., Washington, D.C.

Before NIES, PAULINE NEWMAN and BISSELL, Circuit Judges.

NIES, Circuit Judge.

Dominique Dubost appeals from the final decision of the United States District Court for the District of Columbia, reported at 225 USPQ 713 (D.D.C.1984), which sustained the decision of the Commissioner of Patents and Trademarks (PTO) denying a filing date of October 8, 1982 to his patent application. We vacate and remand.

## Background

Counsel for Dominique Dubost delivered a patent application to the Patent and Trademark Office on October 8, 1982. Accompanying the application was a letter claiming priority under 35 U.S.C. § 119 based upon a French application filed October 16, 1981. Because October 16, 1982 was a Saturday, Dubost had until October 18, 1982 to file his U.S. application and still obtain the benefit of his earlier French filing date.

Also accompanying the application was a self-addressed postcard which contained the statement "Fee of $150.00 paid by check" and which was intended to be date stamped by the PTO, marked with a serial number, and returned to Dubost's attorney to indicate that the materials had been received by the PTO on a particular date. The application was complete in all respects except that the check by applicant's counsel, otherwise properly made out in an amount sufficient to cover the filing fee, was unsigned. The postcard was date stamped October 8, 1982 and returned to counsel.

Subsequently, by letter dated October 20, 1982, the PTO informed Dubost's counsel that the application had been received on October 8, 1982, and given a serial number 433,463. The letter stated: "We are returning your check ... since it was received unsigned." Counsel immediately resubmitted a signed check along with a petition to the Commissioner under 37 C.F.R. § 1.181 seeking the October 8 filing date.

In a decision dated December 29, 1982, the PTO denied Dubost's petition without reasons, and stated that "[t]he earliest filing date the application is entitled to is October 28, 1982, the date of receipt of the signed check."

Dubost next filed in the PTO a document entitled "Request for Reconsideration on Petition, Request for Waiver of Informality Under 35 U.S.C. § 26 and Grant of Filing Date of October 8, 1982." Accompanying this document was an affidavit of Paul Fiess, an account officer for Dubost's counsel's bank. Fiess averred that the subject account is a "priority account." He averred further that, if an unsigned check drawn on that account were to reach the bank, he would telephone Mr. Steinberg or Mr. Raskin (Dubost's counsel) "and would accept their telephone authorization to pay the amount of said check."

In the Request for Reconsideration, counsel, pointing out the criticality of the filing date, argued that all efforts were made by the inventor to ensure timely filing and that the error was an inadvertency by their office manager, whose affidavit was submitted. It was further argued that the Commissioner waives the literal requirement of 35 U.S.C. § 111 that the application be "accompanied by the fee required by law" whenever payment is made by check because actual payment on a check is not made until the check is deposited and the amount remitted by the applicant's bank. Thus, all checks are provisionally accepted. Further, the argument was made that the Commissioner should have exercised his discretion to waive the informality of the unsigned check under 35 U.S.C. § 26.

On reconsideration, the Commissioner upheld the denial of Dubost's request for the earlier date. The opinion stated that the check was not negotiable in the form in which it was presented to the PTO, and could not have been cashed without further authorization from the firm. The Commissioner also concluded that he has no au-

thority to waive the statutorily required filing fee. Dubost then filed suit in the U.S. District Court for the District of Columbia.

The district court held that it had jurisdiction pursuant only to 28 U.S.C. § 1361, the mandamus statute, and that Dubost "has failed to demonstrate that a clear duty owed him was either unfulfilled or performed in an arbitrary or capricious manner." According to the district court, § 111 contains no provision for a waiver of the patent application fee "required by law," and counsel's unsigned October 8 check cannot satisfy the § 111 requirement, since it cannot invest the firm with any rights or liabilities. The court stated that, contrary to counsel's argument, the PTO is not permitted by 35 U.S.C. § 26 to provisionally accept an unsigned check because that section "deals only with provisional acceptance of defectively executed oaths or declarations, not checks which are not executed at all." Since the PTO had a practice of returning unsigned checks, the court concluded that it was not arbitrary or capricious for the PTO to refuse to accept the check in this case. After rejecting each of the additional theories advanced by Dubost, the court granted the government's motion for summary judgment. Dubost then filed the present appeal.

Dubost argues, *inter alia*, that 35 U.S.C. § 111 as interpreted by the Commissioner in 37 C.F.R. § 1.23 [1] in combination with 35 U.S.C. § 26 [2], authorizes the PTO to accept the firm's check as conditional payment, even though unsigned. Only if a check had, in fact, been dishonored after presentation to the bank, per Dubost, should the filing date have been denied. Alternatively, Dubost argues that the unsigned check

---

1. 37 C.F.R. § 1.23 provides, in pertinent part:
   *Method of payment.*
   All payments of money required for Patent and Trademark Office fees ... should be made in U.S. specie, Treasury notes, national bank notes, post office money orders, or by certified check. If sent in any other form, the Office may delay or cancel the credit until collection is made.

2. 35 U.S.C. § 26 reads as follows:

*Effect of defective execution*
   Any document to be filed in the Patent and Trademark Office and which is required by any law, rule, or other regulation to be executed in a specified manner may be provisionally accepted by the Commissioner despite a defective execution, provided a properly executed document is submitted within such time as may be prescribed.

is a document with a "defective execution" within § 26.

The solicitor argues that the October 8, 1982 submission was not "accompanied by the fee" required by law and, therefore, is not entitled to that filing date. According to the solicitor, the PTO has no authority to waive the fee requirement, nor can it make loans or extend *credit*. Even if the PTO had authority to accept an unsigned check, the solicitor agrees with the district court's conclusion that failure to do so was not an abuse of discretion because of the PTO policy of returning unsigned checks.

The solicitor asserts that the district court properly declined to invoke § 1.23 and § 26 in Dubost's favor. According to the solicitor, the § 1.23 phrase "in any other form" means conventional forms of payment, such as uncertified checks, which are not among those specifically designated. The solicitor concludes that an unsigned check is not a form of payment of money at all, and, thus, is not within the regulation.

The solicitor argues that § 26 was only intended to apply to defectively executed oaths or declarations. Although not citing any authority which in positive terms states such a limitation, the solicitor relies on the fact that he could find no cases in which § 26 was used for purposes other than correcting a defective oath or declaration, and on the fact that the legislative history contains nothing specifically approving Dubost's interpretation. Moreover, the solicitor argues, the language of § 26 is discretionary, and in view of the PTO practice of returning unsigned checks, there was no abuse of discretion in doing so here.

### Jurisdiction

28 U.S.C. § 1295(a)(1) vests this court with jurisdiction over any appeal from a final decision of a district court, if the district court's jurisdiction was based in whole or in part on 28 U.S.C. § 1338, with some exceptions not here applicable. 28 U.S.C. § 1338(a) vests the district court with jurisdiction over "any civil action arising under any Act of Congress" relating to,

among other matters, patents. *See Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1429, 223 USPQ 1074, 1079 (Fed.Cir.1984) (in banc). Hence, if the district court had "arising under" jurisdiction over the subject case, then the appeal from the district court's final decision is properly before this court. In resolving the question of our jurisdiction over this appeal, it is unimportant that neither party raises a challenge thereto, nor does it make any difference that the district court failed to articulate § 1338(a) as a basis of its jurisdiction. This court must, in every appeal, assure itself that jurisdiction exists.

This court has stated that for jurisdiction of the district court to have been founded on § 1338(a), "plaintiff must have asserted some right or interest under the patent laws, or at least some right or privilege that would be defeated by one or sustained by an opposite construction of those laws." *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1570, 221 USPQ 1121, 1123 (Fed.Cir.1984) (holding action did not arise under the patent laws), citing *Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 286, 22 S.Ct. 681, 682, 46 L.Ed. 910 (1902), wherein the Court reiterated its holding to the same effect in *Pratt v. Paris Gas, Light & Coke Co.*, 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897). Thus, the jurisdiction issue in this case is whether Dubost asserted before the district court some right or privilege which would be defeated by one or sustained by an opposite construction of the patent laws.

In *Atari*, this court stated that "[a] claim arises under the particular statute which creates the cause of action." *Id.* 747 F.2d at 1429, 223 USPQ at 1079. That much is beyond dispute, and has been recognized at least as early as Mr. Justice Holmes' opinion in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). No more than that was necessary in *Atari* which involved, *inter alia*, a claim of patent infringement. In the present case, however,

further refinement is required. As recently stated by the Supreme Court:

> [I]t is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district court's original jurisdiction than it is for describing which cases are beyond district court jurisdiction ... and even the most ardent proponent of the Holmes test has admitted that it has been rejected as an exclusionary principle....

*Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (citations omitted). Thus, it is not controlling that Dubost's claim does not appear to be created by the patent laws in the same sense as the bulk of § 1338(a) cases.

Dubost's complaint made to the district court clearly stated a right or interest that would be defeated or sustained by the construction given to the patent laws. If, as Dubost alleged, an unsigned check satisfies the requirement contained in § 111 that the application be "accompanied by the fee required by law," he will gain the benefit of his foreign priority date. If the unsigned check were held to not satisfy the § 111 requirement, he will not be entitled to claim priority. Thus, the district court's resolution of this case necessarily entailed a construction of the fee requirement of § 111. Further, the construction of the statute directly affects Dubost's entitlement to priority under § 119. Assuming the existence of an intervening reference, loss of priority could have an adverse impact upon Dubost in a variety of ways, from requiring a narrowing of his claims to divesting him of the entirety of his prospective substantive patent rights.

We conclude that the district court had jurisdiction over the subject case under, *inter alia,* 28 U.S.C. § 1338(a). *Accord Boyden v. Commissioner of Patents,* 441 F.2d 1041, 1043 n. 1, 168 USPQ 680, 681 n.

1 (D.C.Cir.), *cert. denied,* 404 U.S. 868, 92 S.Ct. 133, 30 L.Ed.2d 112, 171 USPQ 321 (1971) (district court had jurisdiction under § 1338(a) to review decision of Commissioner declining to file an application which was not accompanied by the filing fee required by law); *cf. In re Makari,* 708 F.2d 709, 218 USPQ 193 (Fed.Cir.1983) (decision of the Commissioner not directly appealable to this court). Thus, this court may hear the appeal.

### Merits

This case deals with the question whether the Commissioner had authority to provisionally grant a filing date on the basis of an unsigned check of applicant's counsel.[3] While the parties have argued the appeal in part on the grounds of whether the Commissioner properly exercised his discretion, the Commissioner's decision did not rest on discretionary authority. The Commissioner ruled that he was precluded from granting the requested filing date under the statutory and regulatory provisions then in effect. The district court agreed. We disagree.

35 U.S.C. § 111 requires, in pertinent part, that:

> The [patent] application must be signed by the applicant and accompanied by the fee required by law.

In the 1982 regulations, which control here, the Commissioner implemented the provision "accompanied by the fee," as follows:

> *Method of payment.*
>
> All payments of money required for Patent and Trademark Office fees ... should be made in U.S. specie, Treasury notes, national bank notes, post office money orders, or by certified check. If sent in any other form, the Office may *delay or cancel the credit* until collection is made. [Emphasis added.]

37 C.F.R. § 1.23.

■ The underscored provision indicates that unconditional payment with the

---

**3.** While 35 U.S.C. § 111 was amended in 1982, the requirement that an application be accompanied by the fee remains. However, the current § 111 specifically allows submission of the fee and oath after submission of the specification and drawings, if required, and the new § 111 states: "The filing date of an application shall be the date on which the specification and any required drawings are received in the Patent and Trademark Office."

application was not required. The Solicitor acknowledged that personal checks were routinely accepted for the purpose of securing a filing date even though "payment" by that form was conditional. The Commissioner's acceptance of a check, which is a "credit" in the accounting sense, had the effect of granting the filing date provisionally. If the check was dishonored, the provisional filing date was voided. Thus, the problem here cannot be, as the Solicitor asserts, simply that "credit", in the loan sense, could not be extended by the Commissioner. A conditional payment, i.e., a personal check, was routinely accepted as sufficient to satisfy the *statutory* requirement for the fee to accompany the application, if the check was subsequently paid.

The Commissioner's decision primarily rested on the ground that an unsigned check is not a *negotiable* instrument in the form in which it was presented to the Office. However, the above regulation did not specify that the only "other form" of payment, which would be deemed sufficient to secure a filing date, was a negotiable instrument. Indeed, as a matter of sentence structure, "other" relates back to the previous list which includes one instrument which is not negotiable.

Further, because the name of the depositor and its priority account number were printed on the check, had the PTO presented the check for payment, the record indicates that the bank would have encountered no difficulty in handling the transaction. Given the evidence submitted by petitioner by affidavit of an official of its bank that the check would have been honored had the PTO submitted it, the lack of negotiability is immaterial under the circumstances here. In this case, the unsigned check on counsel's account has been proved to have been as good as a signed check as far as payment to the PTO is concerned.

Finally, another basis for the Commissioner's decision was his conclusion that "[s]ince the filing fee is a statutory requirement, the Commissioner has *no authority to waive* the requirement," (emphasis added) citing *Boyden v. Commissioner of Pat-*

*ents, supra.* However, no issue of waiver exists in this case. The PTO has, in fact, received the required fee here. Dubost does not seek waiver, but only acknowledgment of an early filing date.

While 35 U.S.C. § 26 may also provide alternative authority to the Commissioner, we need not decide that issue in view of the above ruling.

Since the Commissioner's decision rested on faulty legal premises, such action cannot be sustained. *See Securities and Exchange Commission v. Chenery Corporation,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).

The judgment of the district court in favor of the Commissioner is *vacated* and the case is *remanded* with the instruction that it direct the Commissioner to consider whether to exercise his discretion in view of the circumstances in this case in favor of or against according Dubost the benefit of the October 8, 1982, filing date.

VACATED AND REMANDED.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent.

The majority view that the PTO can in this case accept an unsigned check on the chance that a friendly banker will honor it not only creates an unnecessary administrative burden, it is wrong as a matter of patent law and as a matter of commercial law.

I.

The majority inappropriately intrudes into the management of the PTO, overruling a discretionary act of the Commissioner which had been upheld by the district court in a mandamus suit. It is the decision of the district court that is before us, and appellant Dubost has not met his burden of showing, on appeal, that the district court erred in failing to find an abuse of administrative discretion.

The majority today decides that an unsigned check is the legal equivalent of "the fee required by law" in 35 U.S.C. § 111:

The application must be signed by the applicant and accompanied by the fee required by law.

The PTO regulations, consistent with the statute, provide in 37 C.F.R. § 1.22:

Fees and charges payable to the Patent and Trademark Office are required to be paid in advance, that is, at the time of making application for any action by the Office for which a fee or charge is payable.

The method of payment is set out in 37 C.F.R. § 1.23, which describes the usual manner of fee payments, by cash and its equivalents:

All payments of money required for Patent and Trademark Office fees ... should be made in U.S. specie, Treasury notes, national bank notes, post office money orders, or by certified check. If sent in any other form, the Office may delay or cancel the credit until collection is made.

In its administrative discretion as authorized in § 1.23, the PTO routinely accorded a filing date to patent applications accompanied by checks that were not certified, subject to collection. If the funds were not collected the filing date (the "credit") was "delay[ed] or cancel[led]" until collectable payment was made. The PTO practice when confronted with an unsigned check, which on its face was not subject to collection, was to treat it the same way: to delay the filing date until a signed check or other form of payment was provided. *See In re Application Papers Filed June 24, 1966*, 152 USPQ 29 (Comm'r Pat.1966). Thus the PTO routinely and correctly handled Dubost's check, in accordance with its rules and its discretionary authority.

The courts have consistently held that 35 U.S.C. § 111 requires that the filing fee be paid before an application can be accorded a filing date. *Boyden v. Comm'r of Patents*, 441 F.2d 1041, 168 USPQ 680 (D.C. Cir.), *cert. denied*, 404 U.S. 868, 92 S.Ct. 133, 30 L.Ed.2d 112, 171 USPQ 321 (1971); *In re Application Papers Filed March 27,* *1974*, 186 USPQ 363 (Comm'r Pat.1975); *In re Application Papers Filed June 24, 1966*, 152 USPQ 29 (Comm'r Pat.1966).

The majority appears to instruct the Commissioner both to exercise his discretion (which he has already done) and to accept unsigned checks as payment as of the date received. This is contrary to 35 U.S.C. § 111, 37 C.F.R. § 1.22, and 37 C.F.R. § 1.23. Although I share my colleagues' sympathy for the applicant, I see only mischief in this benevolence. The PTO receives hundreds of thousands of fee payments each year. I see no flaw in the Commissioner's administration of the fee statute in accordance with standard commercial practice.

An unsigned check has no status as a commercial instrument. It is not money; it is not legal tender; it is not negotiable; it is not an enforceable promise to pay. U.C.C. § 3–104 makes clear that a negotiable instrument must "be signed by the maker or drawer", and that "[n]o person is liable on an instrument unless his signature appears thereon." Even for non-negotiable instruments, *see* U.C.C. §§ 3–104(3) and 3–805, the signature is required. An unsigned check is neither a negotiable nor a non-negotiable instrument.

Dubost argues that the phrase in 37 C.F.R. § 1.23 "[i]f sent in any other form" includes unsigned checks. But even if this phrase could include unsigned checks, the same sentence authorizes the PTO to "delay or cancel the credit until collection is made". The plea of petitioner, to which the majority accedes, is to grant an unsigned check a preferred status over other forms of uncollectable payment.

The majority apparently places controlling weight on Dubost's submission that his counsel's banker, if he received the unsigned check for payment, would have contacted the maker and upon his authorization the banker would have honored the unsigned check pending actual signature by the maker. Most citizens do not enjoy such cooperative informal banking relation-

ships.[1] And no one has explained how the check would have reached Dubost's counsel's bank. If the PTO attempted to deposit the unsigned check routinely, the PTO's depository bank would be expected to reject it.[2]

Common experience is that the check would bounce back to the PTO. The majority appears to accept that "the credit" could then be cancelled. The patent applicant will thus have lost even more time in perfecting the application than under the actual practice, when the check was promptly returned to Dubost by the PTO.

Courts should not readily intervene in the day-to-day operations of an administrative agency when the agency practice is in straightforward implementation of the statute. The majority has imposed a continuing burden[3] on the PTO that is contrary to the statute and the regulations, and that common sense ought to reject.

The position adopted by the majority can not reflect a reasonable intent of Congress. I note the 1982 amendment to 35 U.S.C. § 111, to enable late payment of the filing fee without loss of the original filing date. This amendment, described as remedial, was not made retroactive.[4] And it is still required that the fee be paid in the form set out in 37 C.F.R. § 1.23, and that if not so paid the credit may be "delay[ed] or cancell[ed] ... until collection is made".

The district court found that the PTO's practice of returning unsigned checks was a valid exercise of administrative discretion consistent with the statute and the regula-

tions. I agree, and would affirm the decision.

## II.

I concur in the majority result on the close question of "arising under" jurisdiction in this case, although I think that their analysis oversimplifies the issue. I caution that there are aspects of Title 35 and its administration still unclear as to the applicability of 28 U.S.C. § 1338(a) for jurisdiction purposes.

---

1. A maker's bank is under no obligation to contact the maker before dishonoring a check, and would be liable to the maker if it charged the maker's account as a consequence of paying an unsigned check without specific authorization, U.C.C. § 4–401.

2. The PTO's bank is charged with knowledge that Dubost is not liable for the amount of an unsigned check, U.C.C. § 3–401(1), and that the instrument is so irregular on its face that it puts either bank on notice of a defense under U.C.C. § 3–304(1)(a). Under U.C.C. § 3–409(1), a drawee bank has no contractual obligation to the payee to accept an unsigned check. While a drawer is normally secondarily liable on an

instrument pursuant to U.C.C. § 3–413(2), there is no liability on an unsigned check. Thus, it is extremely unlikely that the check would have reached Dubost's bank.

3. In order to achieve the result described by the majority the PTO must take the check directly to the maker's bank to determine whether the bank has made a special arrangement to honor this maker's unsigned checks; the PTO could not merely attempt to deposit the unsigned check routinely with its depository bank.

4. Its effective date was six months after its enactment. *See* Pub.L. No. 97–247, § 17(c), 96 Stat. 319, 323 (1982).