**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FELIX DINGLASAN BLANCO, JR.,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-72159

Agency No.
A078-031-594

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 4, 2009—Pasadena, California

Filed July 15, 2009

Before: John T. Noonan, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Russell L. Marshak, Popkin, Shamir & Golan, Los Angeles, California, for the petitioner.

Lauren Fascett and Song E. Park, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

GRABER, Circuit Judge:

Is an alien's otherwise complete and timely application for adjustment of status properly rejected as untimely for the sole reason that his lawyer's accompanying check for the proper amount of the filing fee was inadvertently unsigned? We answer that question "no" and, therefore, grant the petition for review.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Felix Dinglasan Blanco, Jr., is a native and citizen of the Philippines. He entered the United States on January 24, 1997, as a nonimmigrant crewman with authorization to remain for one month. He overstayed and, approximately four years later, married a lawful permanent resident.

Petitioner's wife submitted a Form I-130, Petition for Alien Relative, on his behalf on April 27, 2001, with the Immigration and Naturalization Service ("INS").[2] The form was fully

---

[1]Petitioner raised three other issues in his petition, which we address here: First, Petitioner is correct that the Board of Immigration Appeals ("BIA") erred in holding that he is removable under 8 U.S.C. § 1227(a)(1)(A), but that error is harmless because Petitioner conceded removability on other grounds. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000) (holding that an error that does not prejudice a petitioner's case is a harmless error). Second, the BIA did not abuse its discretion in refusing to grant Petitioner a continuance because there was no evidence of the government's alleged stipulation that Petitioner qualified as a "grandfathered alien" under 8 U.S.C. § 1255(i) and the immigration judge gave the parties time to conference about the issue. *See Barapind v. Reno*, 225 F.3d 1100, 1113 (9th Cir. 2000) (holding that we review for abuse of discretion). Third, the BIA acted properly in permitting single-member review of Petitioner's appeal, 8 C.F.R. § 1003.1(e), and in issuing a brief decision, *id.* § 1003.1(e)(5).

[2]The INS ceased to exist on March 1, 2003, when its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. We refer to the agency as the INS because the hearings in this case took place before the transfer.

completed and signed; accompanying it were fully completed and signed Biographic Data Form G-325, true copies of the marriage certificate and the wife's alien resident card, and a check from Petitioner's counsel for $110 made payable to the INS as payment for the I-130 filing fee. Apparently by accident, the check was unsigned.

The INS received Petitioner's application on April 29, 2001. Approximately four months later, the INS returned the whole application package to Petitioner's counsel, noting that an unsigned check was not acceptable and requesting a signed check or money order. Counsel immediately signed the check that had been returned and resubmitted it, along with the whole petition packet, to the INS. The INS received the petition for the second time, with the now-signed check, on September 4, 2001.

Petitioner's wife became a naturalized citizen of the United States in March 2002. She renewed her petition on his behalf and, as the spouse of a citizen, Petitioner applied for adjustment of status under 8 U.S.C. § 1255(i).

The INS denied Petitioner's application for adjustment of status. The agency first noted that Petitioner was ineligible for adjustment under 8 U.S.C. § 1255(a) because he had entered the United States with a nonimmigrant crewman visa. The agency then rejected the application under 8 U.S.C. § 1255(i) because, in order to adjust under that section, the visa petition on his behalf had to have been properly filed on or before April 30, 2001. The INS ruled that Petitioner's "initial visa petition was not properly filed on or before" that date and was "not approvable at the time of filing," even though it had been first received on April 29, 2001. Accordingly, the INS found Petitioner ineligible for adjustment of status and denied his application.

Thereafter, the INS commenced removal proceedings. After a hearing at which Petitioner conceded removability, an

immigration judge found that Petitioner was ineligible to adjust his status. On appeal, the Board of Immigration Appeals agreed. The BIA held that Petitioner was ineligible to adjust his status under 8 U.S.C. § 1255(i) because "he did not submit a properly filed application on or before the April 30, 2001, sunset date of that provision"; the unsigned check made the filing defective. Petitioner timely seeks our review.

## DISCUSSION[3]

Title 8 U.S.C. § 1255(i) provides for adjustment of status to that of an alien lawfully admitted for permanent residence for certain aliens who are physically present in the United States. Such an alien may apply for adjustment of status and must remit with the application "a sum equalling $1,000 as of the date of receipt of the application, but such sum shall not be required from . . . an alien who is the spouse . . . of an individual who obtained . . . permanent resident status" under specified statutory provisions. Because he was married to a permanent resident, Petitioner was not required to pay $1,000 at the time of the application, but the INS charged a $110 filing fee to process the application. *See* 8 C.F.R. § 103.7 (authorizing the INS to charge a processing fee for formal applications or petitions).

Title 8 C.F.R. § 103.2(a)(7) states in relevant part:

> Receipt Date — (i) General. An application or petition received in a[n INS] office shall be stamped

---

[3]We review de novo questions of law in removal proceedings. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). We give *Skidmore* deference to a nonbinding agency interpretation only to the extent of its thoroughness and overall persuasiveness. *Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Here, the BIA held that Petitioner was ineligible for an adjustment of status under 8 U.S.C. § 1255(i) without any statutory or regulatory analysis. Because the BIA's decision was neither thorough nor persuasive, we do not defer to it.

to show the time and date of actual receipt and, unless otherwise specified in part 204 or part 245 or part 245a of this chapter, shall be regarded as properly filed when so stamped, if it is signed and executed and *the required filing fee is attached* or a waiver of the filing fee is granted. *An application or petition which is not properly signed or is submitted with the wrong filing fee shall be rejected as improperly filed.* Rejected applications and petitions, and ones in which the check or other financial instrument used to pay the filing fee is subsequently returned as non-payable will not retain a filing date . . . .

(ii) Non-payment. *If a check or other financial instrument used to pay a filing fee is subsequently returned as not payable, the remitter shall be notified and requested to pay the filing fee and associated service charge within 14 calendar days, without extension.* If the application or petition is pending and these charges are not paid within 14 days, the application or petition shall be rejected as improperly filed. If the application or petition was already approved, and these charges are not paid, the approval shall be automatically revoked because it was improperly filed. If the application or petition was already denied, revoked, or abandoned, that decision will not be affected by the non-payment of the filing or fingerprinting fee.

(Emphases added.) Further, 8 C.F.R. § 103.7(a)(2) provides in relevant part:

A charge of $30.00 will be imposed if a check in payment of a fee or any other matter is not honored by the bank or financial institution on which it is drawn. A receipt issued by a[n INS] officer for any remittance shall not be binding upon the [INS] if the remittance is found uncollectible. *Furthermore, legal*

*and statutory deadlines will not be deemed to have been met if payment is not made within 10 business days after notification by the [INS] of the dishonored check.*

(Emphasis added.)

**[1]** Those regulations direct that an application or petition is properly filed when it is actually received, provided that the application is signed and "the required filing fee" is attached. *Id.* § 103.2(a)(7)(i). The regulations further provide that an application or petition is to be rejected only if the *application* is not properly signed or if "the wrong filing fee" is submitted. *Id.* The initial filing date will be retained unless the application is not properly signed, the wrong filing fee is submitted, or the check or other financial instrument later is returned as nonpayable. *Id.*

**[2]** No statute or regulation addresses the situation in which a signed application is accompanied by an unsigned check for the correct amount of the filing fee.[4] The regulations provide that an application that is submitted with the "wrong filing fee" must be rejected. 8 C.F.R. § 103.2(a)(7)(i). Contrary to the BIA's conclusion, a check for an incorrect amount, however, is not the same as an unsigned check for the right amount. A check for an incorrect amount can never result in payment of the correct filing fee, whether or not the bank honors it. A check that is not signed, on the other hand, can result in payment of the correct fee if the bank decides to honor it. Arthur Winston & Jay Winston, *Complete Guide to Credit and Collection Law* 298 (2d ed. 2000).

---

[4]We need not and do not decide whether the result would be the same for an alien who must, under 8 U.S.C. § 1255(i), remit with the application "a sum equalling $1,000 as of the date of receipt of the application." As noted above, Petitioner is exempt from that fee; the processing fee charged here is not a statutory requirement.

A check that is unsigned may be deposited by the recipient by endorsing on the reverse side of the check the payee's signature and guaranteeing to the bank the signature of the maker of the check. *Id.* Specifically,

> [w]hen the check is presented to the maker's bank, the bank accepts the check and transfers the funds. The maker who receives the debit on the bank statement will not contact the bank since he or she believed the check was signed.

*Id.* The bank is not, of course, obligated to deposit an unsigned check; rather, the bank may refuse to deposit a check not properly signed because, if that check were fraudulent or unauthorized by the payer, the bank faces possible liability. 1 Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks* § 16.06 (revised ed. 2000). But the bank *may* honor the check.

In accordance with these principles, at least one government agency accepts unsigned checks for processing. The Internal Revenue Service sets forth in its Internal Revenue Manual that remittances and tax returns containing "unsigned checks *can be* submitted for processing." Internal Revenue Manual § 5.4.1.8.[5]

**[3]** Thus, banks may and sometimes do accept unsigned checks. So long as the bank accepts liability for an unsigned check if the deposit turns out to be unauthorized, there is no legal authority of which we are aware that prevents a bank from accepting such a check. The bank assumes its own risk in accepting the check; but, in the absence of a statutory or regulatory directive, it is not the place of an agency to decide for the bank whether or not to assume that risk.

---

[5]Petitioner brought the Internal Revenue Manual, and other evidence pertaining to the potential validity of unsigned checks, to the attention of the BIA. Therefore, there was evidence in the record that contradicted the BIA's conclusion that an unsigned check is per se invalid.

**[4]** The INS could have presented Petitioner's lawyer's unsigned check to the bank and allowed the bank to determine whether or not to accept the payment. Indeed, the regulations contemplate "grandfathering" the receipt date of a check that is dishonored, and the applicant may have a grace period during which to make good on the check. 8 C.F.R. § 103.7(a)(2). The regulation sets forth that the INS will charge a petitioner who submits a nonpayable check and that statutory deadlines "will not be deemed to have been met if payment is not made within 10 business days after notification . . . of the dishonored check." *Id.* Although the regulation requires the petitioner to pay within 10 business days (usually the equivalent of 14 calendar days) in order to retain a deadline, it implicitly tolerates some flexibility on the part of the agency. Thus, the regulation demonstrates that the agency does not require immediate payment in every case.

**[5]** To summarize, no regulation specified that the INS must reject a signed application accompanied by an unsigned check for the right amount of the fee, when all other aspects of the application were complete and proper. A regulation, 8 C.F.R. § 103.2(a)(7), did specify that the INS must reject an application that was "not properly signed" or that was accompanied by "the wrong filing fee." In this case the BIA interpreted that regulation to encompass an unsigned check for the right amount of the fee. But the regulation does not say that and does not necessarily imply that. For that reason, the BIA misinterpreted the regulation to cover this situation, so its decision is contrary to law. Moreover, all the evidence in the record, including procedures of the Internal Revenue Service, shows that an unsigned check is not per se invalid. Accordingly, no reasonable adjudicator would find in accordance with the BIA's decision. *See* 8 U.S.C. § 1252(b)(4) (stating standard of review).

In a similar case, the Federal Circuit held that the United States Patent and Trademark Office ("USPTO") was required to file a patent application with an unsigned check on the date

that the agency first received it. *Dubost v. U.S. Patent & Trademark Office*, 777 F.2d 1561 (Fed. Cir. 1985). The USPTO's decision to the contrary could not be sustained because it "rested on faulty legal premises." *Id.* at 1566. The statute in *Dubost* was similar to the regulation here; it required that the "application must be . . . accompanied by the fee required by law." 35 U.S.C. § 111; *Dubost*, 777 F.2d at 1565. Here, 8 C.F.R. § 103.2(a)(7)(i), on which the BIA relied, requires that an application have "the required filing fee . . . attached." The *Dubost* court reasoned that a regulatory provision allowing the USPTO to delay or cancel credit for payment sent in forms *other* than certain listed forms suggested that unconditional payment with the application was not absolutely required. 777 F.2d at 1565-66. Similarly, here, the regulatory provisions for how to handle dishonored checks —contemplating that deadlines could be met even with some delay if payment was resubmitted—suggest that unconditional payment with the application was not absolutely required.[6]

[6] By rejecting Petitioner's application on the basis of an unsigned check, the INS did not demonstrate "flexibility" in enabling Petitioner to take advantage of the adjustment of status provision of 8 U.S.C. § 1255(i). *Balam-Chuc*, 547 F.3d at 1046. Petitioner was present in the United States on December 21, 2000, and he petitioned the Attorney General for an immigration visa before April 30, 2001. His application con-

---

[6]This case is distinguishable from *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1046 (9th Cir. 2008), on the facts. There, the INS did not receive the application until about six weeks after the statutory deadline, and we held that equitable tolling did not apply to the statutory deadline promulgated in 8 U.S.C. § 1255. *Balam-Chuc*, 547 F.3d at 1046-51. By contrast, here, the record shows without dispute that Petitioner's counsel submitted a full and complete application, including the proper amount for the filing fee, on April 27, 2001, and that the INS received it on April 29, 2001—before the statutory deadline. As discussed in the text, it is contrary to evidence Petitioner submitted in the record and to the implications of the agency's own regulations for the INS to consider an unsigned check per se invalid.

tained all the "necessary supporting documents" and included the proper amount for the filing fee. *Id.* Rejecting Petitioner's application on the basis that an unsigned check is per se invalid was contrary to the agency's regulations and the facts Petitioner brought to its attention.

Petition GRANTED; REMANDED for further proceedings.