Wagn Ole GODTFREDSEN, Plaintiffs,

v.

Donald W. BANNER, Defendant.

Civ. A. No. 79–1555.

United States District Court,
District of Columbia.

Sept. 5, 1980.

Gerald H. Bjorge, Washington, D. C., for defendant.

Michael L. Burack, Wilmer & Pickering, Washington, D. C., for defendant-intervenor.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

■ This is an action in which plaintiffs Wagn Ole Godtfredsen and its assignee, Leo Pharmaceutical Products Ltd., seek judicial review of a determination by defendant Commissioner of Patents and Trademarks regarding formulation of the counts to be considered in a patent office interference proceeding.[1] Peter Bamberg, et al. and its assignee, Astra Pharmaceutical Products, Inc., have intervened as defendants in this action, based upon their interest as junior party in the interference proceeding declared between Bamberg and plaintiffs. Presently before the Court are plaintiffs' motion for summary judgment and defendant's and defendant-intervenors' motions to dismiss or for judgment on the pleadings.

## I

On July 26, 1976, the Examiner of Patent Interferences declared an interference between plaintiffs' patent application filed on March 3, 1975 and an application by defendant-intervenors filed on April 25, 1974 both concerning certain pharmaceutical compositions used in the treatment of bacterial infections. The interference, as declared, involved a single count directed to a method of treating bacterial infections with a 1:1 mixture of mecillinam/ampicillin.[2]  During

Fred F. Fielding, Morgan, Lewis & Bockius, Washington, D. C., Patrick J. Hagan, Dann, Dorfman, Herrell & Skillman, Philadelphia, Pa., for plaintiffs.

1. A patent interference is a proceeding to determine which of two or more inventors claiming the same invention is the first inventor and is declared by the Patent Office if it is suspected that a patent application under consideration would interfere with a pending application of another party or an unexpired patent. The issue to be determined by the Board of Patent Interferences is the priority of invention. 35 U.S.C. § 135. The applicant whose application has the earliest effective filing date is denominated the "senior party" in the interference proceeding and all other applicants are "junior parties," such status determining the allocation of the burden of proof on various issues. See Toulman, Handbook of Patents, 157 (2d ed. 1949). The interference is based on a patentable claim to the interfering subject matter in the parties' applications and the claim becomes a "count" in the interference.

2. Mecillinam and ampicillin are both known pencillins which under the method of treatment devised by the applicants have a synergistic antibacterial effect exceeding that expected

the motions period in the interference, plaintiffs moved to substitute a broader count than that designated by the examiner, claiming that subject matter common to both applications had been excluded from consideration. More specifically, the plaintiffs proposed that the primary examiner replace the present count with a broader Count A which encompassed three related two-component antibiotic mixtures, each containing the compound mecillinam as a common component. The primary examiner denied the motion and instead granted plaintiffs' alternative motion to add counts 2 and 3 which correspond to the mixtures of mecillinam/benzylpenicillin and mecillinam/azidocillin, respectively. Plaintiffs petitioned the Commissioner of Patents and Trademarks (the Commissioner) to review this decision,[3] alleging abuse of discretion by the Primary Examiner in denying substitution of Count A for Count 1, and arguing that the use of mecillinam with different common penicillins was a single generic invention to be considered as the sole count of the interference proceeding. The Commissioner denied the petition, and plaintiffs are seeking this review from the denial.[4]

Plaintiffs allege as error the Commissioner's construction of two recent decisions which, in their opinion, prevent an examiner from rejecting a particular claim on the basis that it contains independent and distinct inventions and mandate substitution of the broadest count common to both par-

ties in the interference.[5] The Commissioner argues that these cases are distinguishable, that the purpose of an interference is to determine priority of invention, and that each count in the interference may not embrace more than one invention. Because of its disposition of the case on other grounds, the Court finds it unnecessary to consider the questions raised by these arguments.

## II

■ Defendants have moved to dismiss the complaint on the ground that the Court lacks jurisdiction over the subject matter because the Commissioner's decision is not final agency action subject to review, and the plaintiffs have failed to exhaust their administrative remedies. The Court agrees.

■ It is clear that the patent statutes do not contemplate judicial review of interlocutory determinations, made during interference proceedings. These laws permit a defeated party only to seek review of an adverse decision by appeal to the CCPA (35 U.S.C. § 141) or by civil action in the district court (35 U.S.C. § 146) when the applicant has been "finally denied a patent because of a Patent Office decision against him and in favor of his adversary on the question of priority." *Sanford v. Kepner*, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12 (1952).

■ Recognizing this difficulty, plaintiffs argue that the Court has jurisdiction under the Administrative Procedure Act, 5

from merely adding their separately-known characteristics.

3. Plaintiffs petitioned the Commissioner for review of the examiner's denial of their motion to substitute Count A as the interference count under 37 C.F.R. §§ 1.181 and 1.244. Although no interlocutory appeal of such decisions made during the motions period is available, the Commissioner on petition may review certain decisions made on motions pursuant to 37 C.F.R. §§ 1.181 and 1.244 which provide that a petition may be taken "to invoke the supervisory authority of the Commissioner in appropriate circumstances."

4. After the decision of the Commissioner, plaintiffs further sought relief from the Court of Customs and Patent Appeals (CCPA) through the filing of a petition under the All Writs Act, 28 U.S.C. § 1651. The CCPA dismissed the

petition, holding that, because its jurisdiction in interference proceedings is limited to review of the determination of priority of invention and matters "ancillary" to priority it could not review the propriety of the substitution of Count A which was a matter "not ancillary" to priority.

5. Plaintiffs rely on *In re Weber*, 580 F.2d 455 (Cust. & Pat.App.1978) and *In re Haas*, 580 F.2d 461 (Cust. & Pat.App.1978) which held that a claim in a patent application may not be rejected under 35 U.S.C. § 121 on the basis that it contains independent and distinct inventions. These cases were before the CCPA on appeal from decisions of the U.S. Patent and Trademark Office Board of Appeals affirming the examiners' rejections of claims in the course of prosecution of patent applications.

U.S.C. § 704, in that allegedly they have been adversely affected by final agency action for which there is no other adequate judicial remedy. However, except in unusual circumstances (see *infra*) judicial review under this provision of the APA is available only if the plaintiff is able to demonstrate that the action complained of is final. *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Commissioner's action in denying plaintiffs' motion to substitute Count A is clearly interlocutory in nature. It is preliminary agency action occurring during the initial stages of a proceeding to determine priority of invention.

In a similar case, review was sought under the APA of a Commissioner's denial of a motion to dissolve made during the preliminary stages of an interference proceeding. *Klein v. Commissioner of Patents*, 474 F.2d 821 (4th Cir. 1973). The Court of Appeals held that the Commissioner's decision did not constitute final agency action reviewable under the APA, explaining (474 F.2d at 825) that "the whole point of the proceeding is to determine priority of invention, and actions of the Patent Office prior to that determination are interlocutory in nature. We believe that judicial intervention at the initial stage of the determination of the question of priority of invention would disrupt the orderly administration of the Patent Office, which has been vested by Congress with the administrative duty of deciding the question of priority of invention."

### III

■ It has, of course, been recognized many times that the validity of what is in form an interlocutory administrative order may be considered by way of judicial review if it is in substance a final determination of rights. At the same time, the courts have consistently warned that "such exceptional authority is available only if the court is clearly convinced that review of final action would be completely unavailable to vindicate the statutory or substantive right." *Phillips Petroleum Company v.*

*Brenner*, 383 F.2d 514 (D.C.Cir.1967); see also, *Fidelity Television, Inc. v. FCC*, 502 F.2d 443 (D.C.Cir.1974); *Environmental Defense Fund, Inc. v. Ruckelshaus*, 439 F.2d 584 (D.C.Cir.1971). Moreover, as noted *supra*, the aggrieved party must have no redress short of immediate court intervention available to it in order to warrant such intervention. These circumstances are not present here.

Plaintiffs' assertions that the Commissioner's determination has adversely affected them and that review of his decision is permanently precluded are wholly based on speculation concerning the outcome of the interference proceedings and the subsequent processing of the parties' patent applications. Plaintiffs predict that they will be awarded priority on one of the counts and defendant-intervenors will prevail on one of the other counts, with the result that two patents will be granted, and that one of these will be held invalid in view of the other. This scenario, however, is entirely conjectural and based on several assumptions which subsequent events may prove to be erroneous.

First, no evidence has been submitted on the issue of priority nor has any determination been made on this issue. Defendants accurately point out that it is possible that plaintiffs will be awarded priority of invention by the Board of Patent Interferences on the entire subject matter of each of counts 1, 2 and 3. If that were to occur, the issues arising from the denial of their motion to substitute Count A would be completely moot. Second, the Patent Office has made no final determination as to whether the subject matter of Count A is patentable to plaintiffs, and it can take no such action until after priority of invention has been determined. After the termination of the interference, the prosecution of the patent applications will be returned to the examiner. Manual of Patent Examining Procedure §§ 1109–1109.2. Even if each party were awarded priority on a single count, as hypothesized by plaintiffs, they would still be able to seek an ex parte determination by the examiner on the patentability of a claim corresponding to Count A. See Manual of Patent Examining Pro-

cedure, *supra* at 1109.2. His determination of patentability on this count could then be appealed to the Board of Appeals and subsequently to either the CCPA or a district court pursuant to 35 U.S.C. §§ 141, 146. In light of the range of possible dispositions resulting from the interference proceedings and the prosecution of the patent applications thereafter, it is clear that review of the Commissioner's decision would be premature. See *Phillips Petroleum Company v. Brenner, supra*, 383 F.2d at 518.

◼ The Supreme Court has explained (*Abbott Laboratories, Inc. v. Gardner, supra*, 387 U.S. at 148–49, 87 S.Ct. at 1515) that premature review of decisions should be avoided to prevent the courts

> from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

This admonition is directly pertinent here.

### IV

Plaintiffs' real complaint appears to be that, if they are required to pursue the generic Count A in ex parte prosecution of their application at the conclusion of the interference proceedings, needless delay will ensue and, more importantly, they will be unable to challenge any grant of a patent to the defendant-intervenors.

First of all, that grievance, too, is based on assumptions which may prove to be false. Plaintiffs assume that if Count A were substituted as the sole count of the interference they would be awarded priority of invention as to the entirety of that count. They contend that if the interference proceeds on the three separate counts, priority will be split between the parties on these counts, and they will be unable to

vindicate their rights vis-a-vis the junior party as to what they claim to be a single inventive concept set forth in the applications of both parties. Defendant-intervenors dispute plaintiffs' assertion that Counts 1, 2 and 3 represent a single inventive concept, and they correctly contend further that the examiner has not determined that Count A is patentable to either party.

More importantly, plaintiffs' fear—that a patent might issue to defendant-intervenors as a consequence of an ex parte process in which they will have no opportunity to mount a challenge—does not represent an issue to be addressed by the Court by circumventing normal rules of finality,[6] but is an inherent consequence of the patent system.

◼ It is well-established in that system that an individual does not have standing to challenge the decision of the Patent Office to grant a patent to another applicant during the prosecution process. The application process is deemed to be an ex parte procedure conducted between the applicant and the Patent Office. See *Chicago Rawhide Mfg. Co. v. Crane Packing Co.*, 523 F.2d 452, 458 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); *Williams Mfg. Co. v. United Shoe Mach. Corp.*, 121 F.2d 273 (6th Cir. 1941), *aff'd*, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. Patent Office procedure becomes adversary in nature only when an interference is declared by the Commissioner or when an infringement action is commenced by a patentee.[7] The same rules are and will be applied in this instance.

◼ Thus, plaintiffs' quarrel is not with the particular decision of the Patent Office in this case but with that general practice and procedure. It may well be that this process does work a hardship on persons with competing claims (although

---

6. Plaintiffs argue that, because of that unavailability of a challenge opportunity, the Commissioner's decision is in effect a final order based on a "realistic appraisal of the consequences" of that decision because they will be denied the right to contest the possible grant of a patent to intervenors. *Isbrandtsen Co. v. United States*, 211 F.2d 51, 55 (D.C.Cir.1954).

7. Moreover, a party does not have a right to such an adversary proceeding. Declaration of an interference, for example, is a matter of the Commissioner's discretion. Cf. *Doyle v. Brenner*, 383 F.2d 210 (D.C. Cir. 1967).

they do have an ultimate remedy by way of an infringement action, delayed and expensive though that may be). In any event, it would be inappropriate for the Court in reliance on the APA in this case in effect to revolutionize patent practice [8] by opening up the opportunity for judicial review to large numbers of applicants at relatively early stages in Patent Office proceedings. It may well be desirable as a matter of policy to permit an individual to protest the grant of a patent other than by an infringement action, but that is a decision for the Congress,[9] not the courts.

For the reasons stated, it is this 4th day of September, 1980,

ORDERED That defendants' motion to dismiss be and is hereby granted, and that the action be and it is hereby dismissed.

---

8. As an alternative basis of jurisdiction, plaintiffs seek to invoke the Mandamus and Venue Act, 28 U.S.C. § 1361. It is clear, however, that an action under this statute lies only "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Commissioner's decision to deny substitution of Count A as the sole count of the interference is discretionary in nature and does not arise out of any duty owed to plaintiff. See *Grall v. Dann*, 188 U.S.P.Q. 95 (D.D.C.1975) (Commissioner's decision to dissolve a patent interference not reviewable under 28 U.S.C. § 1361).

9. Proposed legislation to that effect is pending in the present Congress. H.R. 6933, presently before the House, provides for a reissue-reexamination procedure which would allow determination of the validity of a patent without resort to an infringement action in court. Under this procedure, the Patent Office examining procedure would have some of the characteristics of an *inter partes* proceeding with the opportunity for public comment or protest on an issued patent. See H.R. 6933, 96th Cong., 2d Sess. (1980). The Senate is also working on a similar bill, S. 1679, including a reexamination procedure.