**Stephen WYDEN, Appellant,**

v.

**COMMISSIONER OF PATENTS AND TRADEMARKS, et al., Appellees.**

**Appeal No. 86–554.**

United States Court of Appeals, Federal Circuit.

Nov. 25, 1986.

Nies, Circuit Judge, concurred and filed opinion.

Stephen Wyden, pro se.

Joseph F. Nakamura, Sol., Fred E. McKelvey, Deputy Sol., and John W. Dewhirst, Associate Sol., Office of the Sol., Arlington, Va., submitted for appellees.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, DAVIS, BALDWIN,[*] SMITH, NIES, NEWMAN, BISSELL, and ARCHER, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the decision of the United States District Court for the District of Columbia granting the motion for summary judgment of the Commissioner of Patents and Trademarks (Commissioner) and denying the petition of Stephen Wyden (Wyden) to overturn the action of the Patent and Trademark Office (PTO) Director of the Office of Enrollment and Discipline in failing to award Wyden a passing grade on the examination for registration to practice before the PTO as a patent agent. Wyden had been registered to practice but was suspended in 1978 for two years for reasons we need not review, subject to reinstatement only upon satisfying the Commissioner's requirements, including passing an examination. Wyden took the examination, after numerous litigated attempts in the District Court for the District of Columbia to become restored to the register without taking it, but failed by a large margin to obtain a passing grade. This is the fourth in a series of suits Wyden has prosecuted, pro se, in the District of Columbia courts. Wyden is not a lawyer. By Order filed July 16, 1985, the District Court found Wyden's present claims barred either as untimely under Local Rule 1–26 or because of res judicata predicated on decisions on the same claims in one or more of Wyden's prior suits. We affirm.

## OPINION

### Jurisdiction

The brief filed by the Office of the Solicitor, PTO, raises a question as to this court's jurisdiction to entertain this appeal, its argument section being devoted mostly to that question. Our jurisdiction is, of course, a threshold question to be cleared in every case, whether or not challenged by a party. *Dubost v. U.S. Patent and Trademark Office*, 777 F.2d 1561, 227 USPQ 977 (Fed.Cir.1985). The court in banc now decides this jurisdictional question as it arises in this case.

As recently stated in *Dubost*, our jurisdiction to review district court decisions in cases arising under the patent laws comes from 28 U.S.C. § 1295(a)(1) which states that we have *exclusive* jurisdiction "of an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title," copyright and trademark cases, which are named in § 1338(a), being excepted by § 1295(a)(1) unless combined with a patent claim. As we also said in *Dubost*, "nor does it make any difference that the district court failed to articulate § 1338(a) as a basis for its jurisdiction." Chapter 85 of Title 28 of the United States Code is entitled "District Courts; Jurisdiction," and contains § 1338(a) which reads as follows:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

As the PTO clearly seems to appreciate, at least one of Wyden's major claims arises under section 32 of Title 35 of the United States Code (USC) which is the Patent Act of 1952, as amended, the heading of that entire title being "PATENTS." Section 32 and its companion section, 31, are the statutory provisions in the organic patent law which pertain to the registration in the PTO of agents and attorneys, which is a prerequisite to their practicing in the PTO in patent matters, their discipline, and removal from the register. Those sections are also the authorization for the Commissioner's promulgation of regulations, which are found in 37 CFR, pertaining to "the

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Patent and Trademark Office," which, if not inconsistent with law, or not suspended by the Commissioner under 37 CFR 1.183, have the force and effect of law. *See* 35 U.S.C. § 6(a).

Sections 31 and 32 of Title 35, which are best understood when read together, are as follows:

§ 31. *Regulations for agents and attorneys*

The Commissioner, subject to the approval of the Secretary of Commerce, may prescribe regulations governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Patent and Trademark Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render to applicants or other persons, valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office.

§ 32. *Suspension or exclusion from practice*

The Commissioner may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 31 of this title, or who shall, by word, circular, letter, or advertising, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the Office. The reasons for any such suspension or exclusion shall be duly recorded. The United States District Court for the District of

Columbia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Commissioner upon the petition of the person so refused recognition or so suspended or excluded.

The review of Wyden's suspension under § 32, by the District Court for the District of Columbia, took place pursuant to the last sentence of that section. Wyden brought his appeal to this court believing it to be the proper forum to review the decision against him.

■ During the pendency of Wyden's appeal here, one Edmund M. Jaskiewicz who, like Wyden, had been suspended from practice before the PTO and had petitioned the District Court for the District of Columbia to review his case, had taken an appeal from an adverse decision to the U.S. Court of Appeals for the District of Columbia Circuit. Notwithstanding the PTO's questioning of our jurisdiction in this Wyden appeal, the PTO, represented by the United States Attorney, inconsistently moved the Court of Appeals for the District of Columbia Circuit on June 27, 1986, to transfer the Jaskiewicz appeal to this court, supporting its motion with lengthy arguments and discussion of authorities. October 7, 1986, the Court of Appeals, with a fully reasoned opinion 802 F.2d 532, granted the motion. The opinion concludes at p. 536, as follows:

### III. CONCLUSION

An action for review of a decision of the Commissioner of the Patent and Trademark Office disciplining an attorney pursuant to 35 U.S.C. § 32 arises under an Act of Congress relating to patents. Therefore, jurisdiction in the District Court is based at least in part on 28 U.S.C. § 1338, and appellate review of that court's decision is granted exclusively to the Federal Circuit by 28 U.S.C. § 1295(a). Accordingly, pursuant to 28 U.S.C. § 1631, this case shall be transferred to [the] United States Court of Appeals for the Federal Circuit.

*Jaskiewicz v. Mossinghoff, Commissioner.*\*\*

■ Since we are in full agreement with the statements of the law in that conclusion, which apply equally to the Wyden appeal, particularly in view of the fact that our sister court believes that it does not have jurisdiction, we hold that we have jurisdiction over Wyden's appeal, noting that the PTO now seems to be of that view also.

In deciding that § 32 is an Act of Congress which relates to patents within the meaning of § 1338(a) and that Wyden's action is a civil action arising under § 32, we express no opinion as to other statutes not before us.

### The Merits

■ After filing its order of July 16, 1985, the District Court considered a Wyden motion for a "new trial" dated July 26, 1985, and issued a second order, filed August 5, 1985, denying it. Of course, there having been a summary judgment, there has been no trial. Appellant's Notice of Appeal states that the appeal is "from the order denying a new trial entered in this action on the 5th day of August, 1985." While the PTO has noted this fact, neither party has taken this notice literally or so much as mentioned denial of a new trial as being an issue before us. The briefs argue the merits of the original order granting the summary judgment and we therefore treat it as raising the questions really before us, considering the fact that Wyden is not a lawyer.

Having carefully considered the presentations of both parties, ·we are unable to find any merit in appellant's contentions. The decision below granting summary judgment in favor of the Commissioner of Patents and Trademarks is therefore *affirmed.*

AFFIRMED.

\*\* 802 F.2d 532, 231 USPQ 477.

MARKEY, Chief Judge, dissenting.

Convinced that this court lacks jurisdiction, I cannot join the court in deciding the merits of this appeal. Nor (absent congressional revision of 28 U.S.C. § 1295 or Supreme Court reversal in this case) can I escape what I see as the effect of the present exercise of jurisdiction on future appeals in which our jurisdiction is said to be present simply because an involved statute "relates to patents."

With all due respect, my reasons follow.

"Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of the law." *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 865, 6 L.Ed. 204, 234 (1824) (Marshall, C.J.).

The present action of the court is in my view an illegitimate exercise of raw judicial power. Because it has the doubtless unintended effect of substituting the will of judges for that of the legislature which it does not discuss, the exercise is at best unfortunate, for the necessary result (if *stare decisis* be not abandoned) is to transfer to this court jurisdiction long present in its sister circuits and not transferred by Congress. Not to put too fine a point on it, and again with all due respect, concern for the position of this court in the judicial system makes the assertion of jurisdiction in this appeal to me an embarrassment.

Seizing upon the naked phrase "relating to patents" as a basis for its assertion of jurisdiction never granted by the Congress, the court disturbingly finesses the effect of its decision on untold future appeals involving other statutes, and on future panels of this court, with "express no opinion." I can discern no principled basis for distinguishing § 32 from any other section of Title 35 governing Patent and Trademark Office (PTO) administration, see Part II, *infra,* or from any of the many statutes listed in Part III, *infra,* each of which "relates to patents" as much and often

*more* than § 32 does. The end result of the court's action here, whether desired by one or all judges, is to place the entire administration of the PTO under review by this court. The result is also to sweep into the jurisdiction of this court numerous petitions and statutes now within the jurisdiction of our sister circuits.

## Part I

### Legitimacy

Congress created this court and enacted § 1295(a)(1) to help solve the specific problem of nonuniformity in application of the patent law and forum shopping in suits for infringement or declaration of invalidity of existing patents, saying that was its *"central purpose,"* H.R.Rep. No. 312, 97th Cong., 1st Sess. 23 (1981), and that "doctrinal stability" was needed because "application of the law" had produced "different outcomes," S.Rep. No. 275, 97th Cong., 2nd Sess. 5, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 15.

In § 1295(a)(1) Congress dealt with *problems in court decisions on issued patents,* not with the administration of the PTO. Congress *selected* § 1338, which had long been in existence, because that was where the problem was, in patent suits filed under § 1338, not in petitions under administrative provisions of Title 35, which had always been brought under § 1331 and had never been properly brought under § 1338. "Relating to patents" in § 1338 does not mean "the administration of the PTO."

Section 1338 of title 28 was written to provide jurisdiction in the federal district court over law suits on issued *patents,* i.e., as it said, in *"patent cases."* This is not a patent case, involves no patent, and deals only with *administrative* law. Contrary to the *Jaskiewicz* panel's assertion, it is not difficult to distinguish the "practice" (disciplinary rules) of the PTO from patent *law.* Moreover, the word "patents" in § 1338

was a substitute for "the patent right", which the Reviser said was a change "in phraseology." Reviser's Notes, 1948 U.S. Code Cong.Service 1701, 1838.

Nothing could be more remote from uniform interpretation of the patent laws than the question of whether an applicant (Wyden or Jaskiewicz) received due process when denied permission to practice in the PTO. That is the *sole* issue raised by a § 32 petition.

Where is there any *evidence* that Congress has granted this court jurisdiction over administrative decisions like those challenged in *Wyden* and *Jaskiewicz?* No such evidence is cited. None exists.

Neither the majority here nor the panel in *Jaskiewicz* points to any indication, in the legislative history or otherwise, that Congress had the slightest intent to place oversight of PTO administration exclusively in this court. Nor can they. There was and is no uniformity/forum shopping problem with § 32 or with any other section of Title 35 governing PTO administration. The outcome of *Wyden* and *Jaskiewicz* cannot possibly influence the uniform application of the patent law. Forum shopping is impossible under § 32, where the appeal goes and should go to the one circuit for the District of Columbia. Congress dealt fully with petitions challenging the Commissioner's actions not in § 1295(a)(1) but elsewhere, placing jurisdiction over them in the district courts under 28 U.S.C. § 1331 and allowing appeals in those *administrative law* cases to remain in the regional circuits.

In § 32, clearly not itself a grant of jurisdiction to this or any court, Congress provided for a *petition* (not a "cause of action," Wyden's sole "claim" being to his right to due process) and for its determination not under the Federal Rules of Civil Procedure but under rules set by the district court.[1]

---

1. Rule 1–26 of the District Court for the District of Columbia reads:

REVIEW OF ORDERS AS TO ADMISSION AND EXCLUSION OF PRACTITIONERS BEFORE THE PATENT OFFICE

A person refused recognition to practice or suspended or excluded from practice before the Patent Office may file a *petition* in this court against the Commissioner of Patents *for review of such action* within thirty days after

Section 32 petitions, and numerous other petitions under other statutes, see Part II, *infra,* have long been decided on the sole issue of due process under the Administrative Procedure Act and jurisdiction of the district court has been universally based on § 1331. How the *petition for review of administrative action* authorized in § 32 can be converted to a "civil action arising under" envisaged in § 1338 escapes at least my understanding. Further, that conversion disregards considerations that have long characterized the field of administrative law.

Congress did visit Title 35 in the Federal Courts Improvement Act of 1982. In so doing, it granted this court jurisdiction over appeals from district court judgments in proceedings filed under the authority of § 145 (28 U.S.C. § 1295(a)(4)(A)) and § 146 (28 U.S.C. § 1295(a)(4)(C)). It *stopped* there. It did not touch § 32 or any other section of Title 35. Nor did it touch any of the many other statutes that can be said (by those bent on doing so) to "relate to patents." The court here goes far beyond Congress' stopping point.

If the Congress had the slightest intent in 28 U.S.C. § 1295(a)(1) of granting this court jurisdiction over appeals that involve statutes "relating to patents," *why* did it not just say so? *Why* did it single out §§ 145, 146 (that "relate" more to "patents" than § 32 does) and then bother to enact the totally unnecessary sections 1295(a)(4)(A) and 1295(a)(4)(C)? *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). The court here and the panel in *Jaskiewicz* do not, and cannot, say.

*Why* did Congress go to the trouble of limiting our jurisdiction to *cases* in which district court jurisdiction "was based, in

whole or in part, on section 1338," if it intended to include *petitions* over which the jurisdiction of the district courts had always been based on § 1331? The court here and the panel in *Jaskiewicz* do not, and cannot, say.

If Congress thought § 1332's "civil action arising" language included § 32 petitions, *why* did it not repeal the then redundant provision for a petition in § 32? *Why* did Congress speak only of § 1338 and say nothing of § 1331?

Treating *Dubost* (that probably was not within our jurisdiction but at least involved refusal of a patent application) as a self-grant of jurisdiction over appeals on § 32 petitions because § 32 "relates to patents" is judicial leap-frogging with a vengeance. It is *Congress,* not our own pronouncements, that is the *source* of our jurisdictional grant.

Neither the court here nor the panel in *Jaskiewicz* says what provision of *patent law* must be "construed." We are not told what patent law construction might vindicate some unmentioned "right" of Wyden, or what patent law Wyden is "invoking." Neither the court here nor the *Jaskiewicz* panel discusses the contrary thrust of this court's holdings in: *In re Bose Corp.,* 772 F.2d 866, 227 USPQ 1 (Fed.Cir.1985); *Beghin-Say International v. Rasmussen,* 733 F.2d 1568, 1570–71, 221 USPQ 1121, 1123 (Fed.Cir.1984); *In re Makari,* 708 F.2d 709, 218 USPQ 193 (Fed.Cir.1983); or in the adopted precedents of this court: *In re James,* 432 F.2d 473, 475, 167 USPQ 403 (CCPA 1970); *In re Marriott-Hot Shoppes,* 411 F.2d 1025, 262 USPQ 106 (CCPA 1969); *In re Wiechert,* 370 F.2d 927, 152 USPQ 247 (CCPA 1967); and *Sundback v. Blair,* 47 F.2d 378, 8 USPQ 220 (CCPA 1931).[2]

the date of the order recording the Commissioner's action. The Commissioner shall answer the petition within twenty days after service of the summons upon him. Within ten days of filing of the answer, the petitioner shall file a certified copy of the record and proceedings before the Patent Office [sic], *which shall constitute the sole basis for the court's review.* [Emphasis added.]

**2.** The panel in *Jaskiewicz* dismisses the Ninth Circuit's decision in *Enders v. American Patent Search Co.,* 535 F.2d 1085, 189 USPQ 569 (9th Cir.1976) on the irrelevant ground that it was decided before this court was created. *Enders* dealt with an attempt to use a conviction under 35 U.S.C. § 33 as a basis for federal jurisdiction over a malpractice suit between citizens of the same state. The attempt was rejected, the court saying:

Neither this court nor the Court of Appeals for the District of Columbia Circuit (and certainly not the PTO) has legitimate authority to assign, transfer, or confer jurisdiction. That authority resides exclusively with the Congress. To employ congressional silence, or a judge's view on what congress "would" do or "should" have done, as a basis for the present self-grant of jurisdiction (or for the shedding of jurisdiction by the *Jaskiewicz* panel) is in my view a grossly unwarranted and unnecessary example, even if unintended, of rampant judicial legislation.

### Part II

#### Other Courts—Other Petitions

Directing appeals from all district courts in patent and Little Tucker Act cases to one appellate court was a big "first" in our country's history and a big step for Congress to take. In so doing, Congress was at pains to remind this court that "Federal courts are courts of limited jurisdiction," that there "is no presumption of jurisdiction," that "jurisdiction must always be affirmatively shown" and cannot "merely be inferred argumentatively." Congress praised our predecessor courts for not allowing "inferential and unwarranted increases" in their jurisdiction. Noting the concern that this court "might appropriate for itself" other elements of federal law, Congress pointed to the "substantial requirement" that the district court must have had jurisdiction under § *1338*, and went on to remind us that a "canon of construction" requires that "courts strictly construe their jurisdiction." S.Rep. No. 275, 97th Cong., 2d Sess. 18–19, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 28–29. In sum, Congress *trusted* us not to do what we are doing here.

The federal district courts have for years reviewed petitions against a variety of Commissioner's orders, with appeals under 28 U.S.C. § 1291 heard in the various circuit courts: petitions in interferences,[3] petitions to revive abandoned applications,[4] pe-

It can be *argued* that a *formalistic* analysis of section 33 demonstrates that it is "related to" patents. The Patent Office was established by Congress for the purpose of processing patent applications pursuant to the patent power granted by the Constitution.... The purpose of section 33 is to protect patent applicants against predation by unauthorized practitioners during the patent application process.... But this appears to us to be a somewhat *tenuous and literalistic connection.* From a common sense reading of sections 33 and 1338, it becomes apparent that there is a *substantial difference between statutes directly relating to patents and those concerning merely collateral aspects of practice before the Patent Office.* We deem this distinction to be critical and to dictate the outcome of this case. While the *human mind may be capable of formulating a literal connection between a particular statute and patents,* the test must be whether there is a relationship strong enough to support a conclusion that it *relates to patents for purposes of providing jurisdiction under section 1338.* Based upon our reading of these two statutes we conclude that section 33 does not relate to patents but is merely connected with patents. [Emphasis added; footnote and citation omitted.]
535 F.2d at 1090, 189 USPQ at 573; *see also Voight v. Kraft,* 342 F.Supp. 821, 174 USPQ 294 (D.Idaho 1972).

3. Under 1962 and 1975 amendments to 35 U.S.C. § 135(c), it is expressly provided that "[a]ny discretionary action of the Commissioner under this subsection shall be reviewable under section 10 of the Administrative Procedure Act." P.L. No. 87–831, 76 Stat. 958 (1962); Pub.L. No. 93–596, § 1, 88 Stat. 1949 (1975). Those amendments incorporated into the statute the practice of the majority of the circuit courts. *See, e.g., Klein v. Commissioner of Patents,* 474 F.2d 821, 177 USPQ 1 (4th Cir.1973); *Anderson v. Watson,* 254 F.2d 956, 117 USPQ 206 (D.C.Cir.1958); *Kingsland v. Carter Carburetor Corp.,* 168 F.2d 565, 77 USPQ 499 (D.C.Cir.), *cert. denied,* 335 U.S. 819, 69 S.Ct. 40, 93 L.Ed. 373, 79 USPQ 453 (1948); *Wigton v. Coe,* 68 F.2d 414, 19 USPQ 262 (D.C.Cir.1933); *Godtfredsen v. Banner,* 503 F.Supp. 642, 207 USPQ 202 (D.D.C.1980); *Grall v. Dann,* 188 USPQ 95 (D.D.C.1975); *Conversion Chemical Corp. v. Gottschalk,* 341 F.Supp. 754, 174 USPQ 346 (D.Conn.1972); *Vogel v. Gottschalk,* 350 F.Supp. 865, 175 USPQ 165 (E.D.Va. 1972).

4. *See, e.g., Smith v. Mossinghoff,* 671 F.2d 533, 213 USPQ 977 (D.C.Cir.1972); *Prohl v. Brenner,* 157 USPQ 609 (D.C.Cir.1968); *Cadillac Gage Co. v. Brenner,* 363 F.2d 690, 150 USPQ 12 (D.C.Cir. 1966); *Winkler v. Ladd,* 221 F.Supp. 550, 143 USPQ 172 (D.C.Cir.1963); *Commissariat A. L'Energie Atomique v. Watson,* 274 F.2d 594, 124 USPQ 126 (D.C.Cir.1960).

titions to compel filing dates,[5] petitions to enter amendments,[6] petitions to compel public use proceedings,[7] petitions to cancel a section 141 appeal, and petitions objecting to requirement for cancellation of references in the specification to prior applications,[8] and petitions challenging the Commissioner's construction of the confidentiality requirement of 35 U.S.C. § 122 in Freedom of Information Act cases.[9]

All the foregoing petitions clearly implicate sections of Title 35 that "relate to patents" as much as does a § 32 petition. If "relating to patents" gives this court jurisdiction over petitions under § 32, it surpasses understanding, as above indicated, how a future panel of this court, confronted by any such petitions and bound by the precedent of this case, could deny jurisdiction. Thus candor requires a recognition that, over time, the court's "relating to patents" rubric will have succeeded in appropriating from our sister circuits the entire body of administrative law represented by petitions challenging any administrative action of the PTO. Congress could have so mandated, but it did not. For this court to do so (or to acquiesce in another court's doing so) is in my view at best unfortunate.

Congress' grant of appellate jurisdiction to this court in 28 U.S.C. § 1295(a)(1) cannot possibly, in my view, be construed as reflecting a congressional intent to *transfer appeals from decisions on all the foregoing petitions* to this court. Even if this

or any court had the legislative authority to take that drastic step (which it obviously does not), no reason for doing so existed when this court was created, and none exists now.

### Part III

### Other Courts—Other Statutes

Responsible judicial decisionmaking involves a type of dichotomy: One should avoid hypotheticals, and, at the same time, recognize the decision's inevitable effect on future cases to which it will apply. In the present appeal it is decided that this court has jurisdiction over appeals from district court judgments on § 32 petitions to review the administration of the PTO in denying Wyden permission to practice as a patent agent. It does so on the rationale that § 32 "relates to patents." It then says Wyden's § 32–authorized petition for review of that administrative action is "a civil action arising under an Act of Congress relating to patents." It then says jurisdiction of the district court was "based, in whole or in part, on § 1338." It then says "we express no opinion as to other statutes not before us."

With all due respect, the court should recognize the inevitable effect of its decision. Other statutes stand in the wings and will confront future panels of this court. If those panels are not to discard respect for precedent, they must hold that

5. *See, e.g., Staeger v. Commissioner of Patents and Trademarks,* 189 USPQ 284 (D.C.Cir.1976), *aff'g* 189 USPQ 272 (D.D.C.1976); *Sturzinger v. Commissioner of Patents,* 377 F.Supp. 1284, 181 USPQ 436 (D.D.C.1974); *Republic Engineering & Manufacturing Co. v. Brenner,* 152 USPQ 4 (D.D.C.1966); *American Cyanamid Co. v. Ladd,* 225 F.Supp. 709, 140 USPQ 364 (D.D.C.1964).

6. *See, e.g., Prohl v. Brenner,* 157 USPQ 609 (D.C.Cir.1968); *Sikora v. Brenner,* 379 F.2d 134, 153 USPQ 585 (D.C.Cir.1967); *Edgerton v. Kingsland,* 168 F.2d 128, 75 USPQ 313 (D.C.Cir.1947), *cert. denied,* 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150 (1948); *Minnesota Mining & Manufacturing Co. v. Coe,* 143 F.2d 12, 61 USPQ 341 (D.C.Cir.1944); *Coe v. United States ex rel. Remington Rand, Inc.,* 84 F.2d 240, 29 USPQ 227 (D.C.Cir.1936).

7. *Svenson v. Coe,* 101 F.2d 684, 39 USPQ 532 (D.C.Cir.1938).

8. *Clover Club Foods Co. v. Gottschalk,* 178 USPQ 505 (C.D.Cal.1973).

9. *See, e.g., Irons v. Diamond,* 670 F.2d 265, 214 USPQ 81 (D.C.Cir.1981), and cases cited therein; *Lee Pharmaceuticals v. Kreps,* 577 F.2d 610, 198 USPQ 601 (9th Cir.1978); *Sears v. Gottschalk,* 502 F.2d 122, 183 USPQ 134 (4th Cir.1974), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); *Misegades v. Schuyler,* 456 F.2d 255, 172 USPQ 577 (4th Cir.1972); *Kleinerman v. U.S. Patent and Trademark Office,* 223 USPQ 18 (D.Mass.1983). [Available on WESTLAW, DCTU database].

the court has jurisdiction if any of those statutes "relate to patents."

The following statutes "relate to patents" as much or more than § 32 does:

(1) *Every one* of the 135 sections of Title 35.

(2) 7 U.S.C. § 178j (patentable inventions relating to native rubber made under contract with various federal agencies are property of the United States).

(3) 10 U.S.C. § 178 (authorizes Foundation For The Advancement Of Military Medicine to obtain patents).

(4) 10 U.S.C. § 2320 (exemption of government and its contractors' patent rights from Department of Defense regulation).

(5) 10 U.S.C. § 2386 (funding for military acquisition of patent rights).

(6) 10 U.S.C. § 7210 (authorizes Secretary of the Navy to purchase patents).

(7) 15 U.S.C. § 2054 (public availability of patents resulting from contracts with Consumer Products Safety Commission).

(8) 15 U.S.C. § 2511 (patentable inventions made under contract with Energy Research and Development Administration relating to electric and hybrid vehicles are property of the United States).

(9) 15 U.S.C. § 2707 (patentable inventions relating to automotive propulsion made under contract with Department of Energy are property of the United States).

(10) 16 U.S.C. § 831r (Tennessee Valley Authority's access to patents; suits against the TVA for patent infringement).

(11) 18 U.S.C. § 497 (felony for forging patent or for knowingly transferring or publishing that patent).

(12) 20 U.S.C. § 91 (access of PTO for educational purposes).

(13)(14) 20 U.S.C. §§ 3477, 3480 (authorize Secretary of Education to obtain patents).

(15) 21 U.S.C. § 372 (access to PTO materials by Food and Drug Administration).

(16) 22 U.S.C. § 2356 (suit against government in district court or Claims Court for unauthorized disclosure or practice of patented inventions).

(17) 26 U.S.C. § 186 (tax deduction for injury sustained as result of patent infringement).

(18) 26 U.S.C. § 483 (interest accrued on sale of patents).

(19)(20) 26 U.S.C. §§ 861, 862 (royalties from patent licensing as gross income).

(21)(22) 26 U.S.C. §§ 1235, 1441 (patent sales as capital gains).

(23)(24) 28 U.S.C. § 1744, 1745 (patents as evidence).

(25) 30 U.S.C. § 666 (public availability of patents resulting from coal research contracts with Department of the Interior).

(26) 30 U.S.C. § 951 (public availability of patents resulting from mine safety contracts with Departments of the Interior and Health and Human Services).

(27) 33 U.S.C. § 725 (prohibition of lighthouse employees from obtaining patents relating to light-houses).

(28)(29) 42 U.S.C. §§ 2457, 5908 (patentable inventions made under government contract with National Aeronautics and Space Administration are property of the United States).

(30) 42 U.S.C. § 5908 (patentable inventions not relating to nuclear energy made under contract with Department of Energy are property of the United States).

(31)(32) 44 U.S.C. §§ 1337, 1338 (printing of patents, *Official Gazette*, PTO rules and reports, etc.)

(33) 50 U.S.C.App. § 2371 (government may cancel patent license agreements entered into during World War II).

As above indicated, I can conceive of no principled way of distinguishing § 32 from any of the foregoing statutes on their relative "relation to patents." If this court has jurisdiction here because § 32 "relates to patents," no responsible future panel of this court, whatever its ingenuity, could hold that jurisdiction was absent over an appeal involving any of the 167 listed "relating to patents" statutes.

If Congress had granted this court appellate jurisdiction whenever an involved statute "related to patents," the majority here and all future panels of this court could cite that grant. Our sister circuits to which an appeal involving such a statute was taken could cite that grant in transferring that appeal to this court. As matters now stand, the *only authority* the majority here and the *Jaskiewicz* panel cite is this court's decision in *Dubost*. Future panels of this court will be bound by *Dubost* and *Wyden,* and may cite *Jaskiewicz*. Whether our sister circuits will agree that court decisions that cite no congressional grant are effective to deprive them of their long-exercised jurisdiction is unknown.

### Conclusion

When a court acts beyond the jurisdiction granted it by Congress, a situation most grave is created. The gravity of that situation is compounded when a court acts to appropriate, or acquiesces in another court's gift of, the jurisdiction previously and currently exercised by other courts. In the present case, the assertion of jurisdiction not granted also gravely injures the jurisprudence surrounding 35 U.S.C. § 32, and 28 U.S.C. §§ 1338, 1331, and 1295(a)(1).

Jurisdiction is not properly granted by judicial fiat. It was concern for just such judicial overreaching that produced in the Constitutional Convention such deep distrust of the notion that there should be a federal judiciary at all. *See* Farrand, *The Records of the Federal Convention* (Rev. Ed.1937); Prescott, *Drafting the Federal Constitution*, Ch. 17 (1941). Harkening as I do here to a "different drummer" from that heard by my colleagues, I am compelled to dissent from the court's exercise of jurisdiction in this case.

NIES, Circuit Judge, concurring.

I concur that this court has jurisdiction over the appeal of this type of suit from the District Court for the District of Columbia. The District of Columbia Circuit has so held. *Jaskiewicz v. Mossinghoff,* 802 F.2d 532 (D.C.Cir.1986). The question is close, and I see no reason to create a conflict with our sister circuit. Clearly, we are not reaching out aggressively here to preempt that court's jurisdiction.

It may be that conflicts over jurisdiction will arise with other circuits which will require a definite resolution. If a subsequent decision by the Supreme Court is rendered which would in theory mean that Wyden should have taken this appeal to the District of Columbia Circuit, the judgment will not, under current jurisprudence, be void. *See* Restatement (Second) of Judgments § 12 (1982).

With respect to this case, it is ripe for resolution at this level of the federal court system. The District of Columbia Circuit has said that it has no jurisdiction in such an appeal. Appellant is entitled to a decision and we are the only other available forum. Accordingly, in my view, it is appropriate to defer to the decision of the District of Columbia Circuit and resolve the matter.

On the merits, I would affirm.