NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KEVIN P. CORRELL,**
*Plaintiff-Appellant*

**v.**

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2022-1420

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:21-cv-00898-AJT-IDD, Judge Anthony J. Trenga.

---

Decided:  July 8, 2022

---

KEVIN P. CORRELL, North Kinstown, RI, pro se.

DENNIS BARGHAAN, JR., Civil Division, Office of the United States Attorney for the Eastern District of Virginia, United States Department of Justice, Alexandria, VA, for defendant-appellee.  Also represented by JESSICA D. ABER; ROBIN CRABB, THOMAS W. KRAUSE, Office of the Solicitor,

2                                            CORRELL v. VIDAL

United States Patent and Trademark Office, Alexandria, VA.

_____

Before MOORE, *Chief Judge*, PROST and HUGHES, *Circuit Judges*.

PER CURIAM.

Kevin Correll appeals an order of the U.S. District Court for the Eastern District of Virginia denying his request to preliminarily enjoin his suspension from practice before the U.S. Patent and Trademark Office ("PTO"). For the reasons set forth below, we affirm.

BACKGROUND

I

The PTO has authority to establish regulations "govern[ing] the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office," 35 U.S.C. § 2(b)(2)(D), and the PTO Director may "suspend or exclude . . . from further practice before the [PTO] any person, agent, or attorney . . . who does not comply with" those regulations, *id.* § 32. Pursuant to this statutory scheme, the PTO has promulgated two sets of rules governing the conduct of individuals practicing before the agency: (1) the "Code of Professional Responsibility," 37 C.F.R. §§ 10.10–10.112, which applies to conduct occurring before May 3, 2013, and (2) the "Rules of Professional Conduct," *id.* §§ 11.101–11.901, which apply to conduct occurring on or after that date. Pursuant to these rules, a "practitioner who is a former or current Federal Government employee" may not "engage in any conduct which is contrary to applicable Federal ethics law, including conflict of interest statutes." *Id.* § 11.111; *see also id.* § 10.10(d) (2002) ("Practice before the Office by Government employees is subject to any applicable conflict of interest laws . . . .").

Congress has passed two statutory provisions dealing with conflicts of interest for federal government employees. The first, 18 U.S.C. § 203, prohibits federal employees from, among other things, receiving

> any compensation for any representational services, as agent or attorney or otherwise, . . . in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, court-martial, officer, or any civil, military, or naval commission.

§ 203(a)(1). The second, 18 U.S.C. § 205, prohibits federal employees from "act[ing] as agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest." § 205(a)(2). A "covered action" includes "any judicial or other proceeding, application, request for a ruling or other determination . . . or other particular matter." *Id.* § 205(h).

## II

Mr. Correll has been a registered patent attorney since September 12, 2000. S. App'x[1] 41. In September 2002, Mr. Correll became an electrical engineer for the U.S. Department of the Navy at the Naval Undersea Warfare Center of the Naval Sea Systems Command in Newport, Rhode Island. S. App'x 42, 44. At approximately the same time, Mr. Correll started a private law firm in Rhode Island and named it "K.P. Correll and Associates." S. App'x 45. The firm provides legal services related to patent and

---

[1]    "S. App'x" refers to Appellee's supplemental appendix.

trademark matters, including acquisition of patents and federal trademark registrations. S. App'x 46–47.

Acting through his firm, Mr. Correll represented private clients, for pay, at the PTO while a Navy employee, filing or prosecuting 211 patent applications and 80 trademark registration applications between 2002 and October 25, 2017. S. App'x 130, 132. He did this despite receiving a reminder, as part of a PTO-distributed practitioner survey in 2003, that federal employees may not represent private clients at the PTO. S. App'x 199. Mr. Correll did not resign from federal employment until September 2018.

The PTO's Office of Enrollment and Discipline ("OED") received notice of Mr. Correll's activity in 2016 and opened an investigation on February 9, 2017. S. App'x 169. At the conclusion of the investigation, the OED filed a disciplinary complaint against Mr. Correll, alleging that he had violated the PTO's rules by representing private clients before the PTO while working as a federal government employee in violation of federal conflict-of-interest statutes. S. App'x 11–40. Mr. Correll's answer admitted the material factual allegations in the complaint. S. App'x 41–68. On September 28, 2018, the Administrative Law Judge ("ALJ")[2] granted partial summary judgment, concluding that Mr. Correll's conduct violated the PTO's rules and rejecting Mr. Correll's argument that applying the conflict-of-interest statutes to his representation of private clients before the PTO violated his First Amendment rights. S. App'x 69–79, 94–96. Then, after an oral hearing, the

---

[2]    Independent hearing officers outside the immediate supervision of the PTO, typically ALJs from other agencies, oversee PTO disciplinary proceedings. *See* 35 U.S.C. § 32; 37 C.F.R. § 11.39. Here, the presiding ALJ came from the Environmental Protection Agency. *See* S. App'x 2.

ALJ concluded that Mr. Correll should be suspended from practice before the PTO for 60 months. S. App'x 173.

Mr. Correll appealed the ALJ's initial decision to the PTO Director and reiterated his First Amendment arguments. On February 4, 2021, the Director affirmed the ALJ's decision in full. S. App'x 163–187. Mr. Correll then sought judicial review of the PTO's final order of discipline in district court pursuant to 35 U.S.C. § 32. Together with his petition, Mr. Correll sought a preliminary injunction staying his suspension pending resolution of the action. The district court declined to issue the injunction, finding that Mr. Correll was unlikely to succeed in showing that the suspension violated his First Amendment rights because it satisfied the balancing test that the Supreme Court set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). Specifically, the district court noted that Mr. Correll remained "free to speak on patent and trademark matters . . . in speeches, written blogs, and even representing private clients at the state and local level," so the government's compelling interest in avoiding even the appearance of impropriety outweighed the minimal burden on Mr. Correll's speech that the suspension imposed. S. App'x 4. The district court also concluded that Mr. Correll was unlikely to succeed on a statute-of-limitations defense because the PTO instituted disciplinary proceedings within one year of learning of his misconduct, satisfying 35 U.S.C. § 32.

Mr. Correll appeals. We have jurisdiction under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1). *See Wyden v. Comm'r of Pats. & Trademarks*, 807 F.2d 934, 937 (Fed. Cir. 1986) (en banc); *accord Polidi v. Matal*, 709 F. App'x 1016, 1018 (Fed. Cir. 2017) (nonprecedential).

DISCUSSION

We review the denial of a preliminary injunction for an abuse of discretion. *Proctor & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 845 (Fed. Cir. 2008). "A district court would necessarily abuse its discretion if it based its

ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014).

Mr. Correll advances three arguments on appeal: first, he argues that neither the district court nor the PTO identified the *Ridpath* factors in their *Pickering* balancing and that, had either considered those factors, the outcome would have been different; second, he says that the federal conflict-of-interest statutes do not apply to his conduct; and third, he submits that the PTO violated his due process rights by failing to appreciate the differing statutes of limitations for trademark and patent matters.

The Administrative Procedure Act ("APA") governs judicial review of a PTO disciplinary action. *Bender v. Dudas*, 490 F.3d 1361, 1365–66 (Fed. Cir. 2007). Pursuant to 5 U.S.C. § 706, a disciplinary action will be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* We review a district court's decision in an action brought pursuant to 35 U.S.C. § 32 de novo, "reapplying the standard" that the district court applied under the APA. *Sheinbein v. Dudas*, 465 F.3d 493, 495 (Fed. Cir. 2006).

Because resolution of Mr. Correll's second argument in his favor would obviate the need to consider his First Amendment claim, we address that first. We conclude, however, that none of Mr. Correll's arguments have merit.

I

We turn first to Mr. Correll's argument that the federal conflict-of-interest statutes do not apply to his conduct. Specifically, Mr. Correll submits that *Van Ee v. EPA*, 202 F.3d 296 (D.C. Cir. 2000), concluded that 18 U.S.C. § 205 is narrower than the interpretation that the PTO and the district court applied when sanctioning him.

Mr. Correll misreads *Van Ee*. That case considered only a narrow issue: "whether Congress intended § 205 to prohibit . . . a career federal employee from presenting the

views of citizens' groups of which the employee is a member, *without receiving compensation*, in response to requests for public comment on proposed land-use plans issued by federal agencies other than the employing agency." 202 F.3d at 301 (emphasis added). Mr. Correll's conduct bears no resemblance to the employee's in *Van Ee*. Indeed, the D.C. Circuit's analysis embraces an interpretation of § 205 that would plainly encompass Mr. Correll's conduct. Looking to the text of the statute, the court concluded that

> the limiting principle guiding Congress with respect to § 205 is that it is to apply only to matters in which the governmental decision at stake is focused on *conferring a benefit*, imposing a sanction, or otherwise having a discernable effect on the financial or similarly concrete interests of *discrete and identifiable persons or entities*. These are situations in which a federal employee, acting as a private party's *agent or attorney*, could be perceived as having divided loyalty and as using his or her office or inside information to corrupt the government's decisionmaking process.

*Id.* at 303 (emphasis added). Applying for a patent or a trademark registration seeks a result on behalf of an identified person or entity that confers a benefit on that person or entity, meaning Mr. Correll's conduct falls squarely within the D.C. Circuit's view of § 205's coverage. In fact, patent applications were a specific example of what the D.C. Circuit thought § 205 might cover. *See id.* ("[T]he conflicting interests at which § 205 is aimed could equally be present, for example, were a federal employee to represent a private party in its uncontested application for a broadcast license, *patent*, or other valuable benefit." (emphasis added)).

Nonetheless, Mr. Correll argues that *Van Ee* supports his position because it holds that § 205 applies to matters in which a federal employee's representational assistance

could potentially distort the government's process. Mr. Correll says that this matters because the Director failed to show that Mr. Correll's conduct satisfied that standard. *See* Informal Appellant Br. 17 (citing *Van Ee*, 202 F.3d at 310). But *Van Ee* does not require the government to make a factual showing that Mr. Correll's conduct, specifically, did or potentially could distort the government's process. The D.C. Circuit was interpreting the scope of § 205, not articulating a standard that the government must meet in a particular case. *See Van Ee*, 202 F.3d at 310. That the D.C. Circuit thought patent applications would fall under § 205's ambit confirms the Director's and the district court's views of the law.

We therefore reject Mr. Correll's contention that the federal conflict-of-interest statutes do not apply to his conduct.

## II

We turn next to Mr. Correll's primary argument: that his suspension violates his freedom-of-speech and freedom-of-association rights under the First Amendment. Mr. Correll submits that the factors the Fourth Circuit outlined in *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292 (4th Cir. 2006), show that the *Pickering* balancing test supports his claim. We disagree.

The Fourth Circuit has outlined "nine non-exhaustive factors that the Supreme Court has considered significant" to the *Pickering* balancing test. *See Lawson v. Gault*, 828 F.3d 239, 252 (4th Cir. 2016) (citing *Ridpath*, 447 F.3d at 317). Though we are not bound by Fourth Circuit law, we agree that the factors reflect Supreme Court precedent and, thus, can be helpful in performing a *Pickering* balancing test. These factors ask whether the public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the

mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and the public accountability that the employee's role entailed. *See id.* Mr. Correll submits that the district court and the PTO should have considered these factors, concluded that none of them favor the government, and ruled in his favor. That argument fails for at least two reasons. First, the factors are not dispositive of the inquiry; rather, they are "pertinent considerations" to the *Pickering* analysis. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987). The court must still conduct the balancing, as the district court did here. Second, Mr. Correll does not persuasively argue that none of the *Ridpath* factors support the government; instead, based on the logic in *Van Ee* already discussed above, Mr. Correll's conduct implicates at least factors (5), (6), and (9).

We agree with the district court that the government's interest in avoiding even the appearance of impropriety outweighs the burden that Mr. Correll's suspension has on his rights. The district court correctly noted that the burden on Mr. Correll's rights is minimal: he remains free to comment on intellectual property matters in any capacity other than representing paying clients before the PTO. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 25–26 (2010) (upholding statute banning advocacy on behalf of foreign terrorist organizations and observing that "the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups"). Meanwhile, the government's interest in patent and trademark applications is, as the district court observed, direct and substantial. *See Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 591 (7th Cir. 1971). We see no abuse of discretion in the district court's *Pickering* balancing and its conclusion that Mr. Correll is unlikely to show that the PTO has violated his rights by suspending him for violating its rules.

Even without *Pickering* balancing, however, it is apparent that Mr. Correll's suspension does not violate his First Amendment rights.  Mr. Correll agreed to comply with the conflict-of-interest statutes when he registered to practice before the PTO by signing an "Oath or Affirmation" in which he promised to "observe the laws and rules of practice of the [PTO]."  Among those rules was a prohibition on federal employees representing private clients. 37 C.F.R. § 10.10(d) (2000); *see also* 18 U.S.C. §§ 203, 205. Attorneys regularly and voluntarily waive certain free speech rights as part of their duties, and the Supreme Court has acknowledged this practice.  *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed.").  So even if Mr. Correll were correct that his suspension otherwise violated his rights, the First Amendment does not excuse him from obligations willingly undertaken, nor does it forbid the PTO's discipline.  *See id.* at 1081.

We therefore reject Mr. Correll's First Amendment challenge to the PTO's disciplinary action.

### III

Mr. Correll's third and final argument is that the district court erred in permitting the PTO to apply the statute of limitations set forth in 35 U.S.C. § 32 to trademark matters.  In Mr. Correll's view, § 32 is limited to patent matters before the PTO, and a different statute—28 U.S.C. § 2462—governs non-patent-matter claims.  The crux of Mr. Correll's argument is that 5 U.S.C. § 500(e) limits 35 U.S.C. § 32 to patent matters.

Section 500 governs administrative practice and permits any "individual who is a member in good standing of the bar of the highest court of a State" to "represent a person before an agency."  § 500(b).  It also permits any "individual who is duly qualified to practice as a certified public accountant in a State" to "represent a person before the

Internal Revenue Service." § 500(c). But these provisions of § 500 "do not apply to practice before the [PTO] with respect to patent matters that continue to be covered by chapter 3 (sections 31–33) of title 35." § 500(e). By its plain terms, then, § 500(e) preserves the PTO's ability to set its own rules on eligibility to practice before it with respect to patent matters. Nothing in § 500(e) limits 35 U.S.C. § 32, which applies to "practice before the [PTO]" generally, not just to patent matters. Mr. Correll's statute-of-limitations argument is meritless.[3]

## CONCLUSION

We have considered Mr. Correll's remaining arguments but find them unpersuasive. We therefore affirm the district court's denial of a preliminary injunction.

## **AFFIRMED**

### COSTS

No costs.

---

[3]    Mr. Correll assumes that the statute-of-limitations clock started when he first violated the PTO's rules and that his continuous conduct constitutes a single violation. An alternative view is that each application Mr. Correll filed is a separate violation with its own starting point for the statute-of-limitations clock, in which case it would not matter whether separate limitations periods apply to patent and trademark matters because Mr. Correll's conduct continued until 2017, well within either period. But neither party briefed this issue, and we need not decide it because 35 U.S.C. § 32 applies to trademark matters anyway.